EUEL D. HARRISON ET AL V. M. V. JAY ET AL

No. A-4486. Decided July 7, 1954.
Rehearing overruled October 6, 1954.
(271 S.W. 2d Series 388)

*Scarborough, Yates, Scarborough & Black,* of Abilene, for appellants.

*Tom Davis, Haskell, Wilson, Wilson & Logan,* of San Angelo, for appellees.

MR. JUSTICE GRIFFIN delivered the opinion of the Court.

On March 29, 1952, an election was held in Kent County for removal of the county seat from Clairemont to Jayton. The result of such election, as canvassed by the Commissioners' Court, was declared to be 610 for Jayton and 308 for Clairemont. If the result so declared is sustained, Jayton being more than five miles from the center of the county, failed to receive the necessary two-thirds majority of the vote polled to remove the county seat as required by Article 1595, Vernon's Annotated Revised Civil Statutes. This suit was brought by twenty interested citizens of Kent County as a statutory election contest of such election. By agreement of the parties, the case was transferred to the District Court of Haskell County where the trial was held which resulted in a judgment for contestants declaring the result of the election to be in favor of the removal if the county seat to Jayton. The trial court, in its judgment, excluded 26 votes for Clairemont and 25 votes for Jayton cast by voters in election precincts other than those in which the voters lived.

It is shown that on January 31, 1952, on the last day for the payment of poll taxes, that the tax collector of Kent County closed his office at Clairemont late in the afternoon and went to Jayton where he remained for some time on that night and issued a number of poll tax receipts in Jayton. It is the contention of contestees that 57 voters who obtained their poll taxes at Jayton on that night were disqualified and that having voted in favor of Jayton, that such votes should have been excluded. There is no attack made upon the qualifications of these voters other than the fact that they obtained their poll tax receipts from the tax collector in Jayton, and that at that time the tax collector had closed his office in Clairemont, the county seat. There is no showing that any person was prevented from obtaining his poll tax receipt at Clairemont because of the fact that the collector had closed his office and gone to Jayton on that night. The trial court held that the 57 votes were valid and should be counted. On appeal the Court of Civil Appeals at Eastland wrote a tentative opinion (which accompanies their certificate as required by Rule 466, T.R.C.P.) affirming the action of the trial court. Upon pro-

per motion the Court of Civil Appeals have certified to us three questions, to wit:

*One*: Did we err in holding that votes cast in an election precinct other than the precinct in which the voters resided could not be counted?

*Two*: Did we err in holding that the contestees could not, in this election contest, attack the validity of the orders of the Commissioners' Court establishing the election precincts?

*Three*: Did we err in holding that the votes cast by voters so obtaining their poll taxes at Jayton were not illegal?

The opinion of the Court of Civil Appeals has correctly disposed of this cause, and the Court has given logical, correct and good reasons supporting their judgment. We will be as brief consistent with the circumstances in giving our answer to the certified questions.

■ To the first question we answer "No." Article 2.06 of the Election Code is very clear and provides: "All voters shall vote in the election precinct in which they reside." This language needs no construction or explanation and by its very terms requires that a voter must cast his vote in the voting precinct where he resides. The decided cases have held this requirement must be obeyed if the vote is to be counted. McCormick v. Jester (1909), 53 Texas Civ. App., 306, 115 S.W. 278, writ dismissed, want of jurisdiction; Linger v. Balfour (1912), Texas Civ. App., 149 S.W. 795; Majir v. Loy, (1941), Texas Civ. App., 155 S.W. 2d 617; Spraggins v. Smith (1948), Texas Civ. App., 214 S.W. 2d 815; Tondre v. Hensley (1949), Texas Civ. App., 223 S.W. 2d 671; State ex rel. Lukovich v. Johnston, (1950), Texas Civ. App., 228 S.W. 2d 327, writ dismissed, want of jurisdiction. Appellants cite some cases where votes cast at a particular place outside the boundaries of an election precinct have been allowed and counted as legal ballots. However, those cited cases are cases where the whole of the qualified electors voting at the election all voted at the same polling place. Through inadvertence or uncertainty as to the election precinct lines, the Commissioners' Court had designated the polling place as outside the legal boundaries. No case has been cited where the votes of residents of an election precinct have been allowed to stand when not cast at the regularly established polling place used by these district voters. When a voter leaves his own polling place to vote at a

polling place not used by the voting residents of his own residence district, his ballot has not been allowed to count.

■ To the second question we answer "No." The attack made in this election contest on the orders of the Commissioners' Court of Kent County, Texas, establishing the election precincts, is a collateral attack. In the case of Davis v. State, 75 Texas 420, 12 S.W. 957, 962, relief was sought upon the ground, among others, that the Commissioners' Court of Hays County had failed to follow the statutory requirements to establish election precincts with the same area and boundaries as the wards of the City of San Marcos. The facts showed such to be true. The validity of the votes cast in the city of San Marcos in the election precinct established by the Commmissioners' Court was attacked on the grounds set out above. This Court, speaking through Justice Gaines, said:

"It may be said that the language of the article (referring to the Statute requiring election precincts in cities to be co-extensive with the wards thereof) is not persuasive merely, but imposes upon the Court an imperative duty. * * * It does not follow that a failure to perform the duty makes its action void. * * * We think that when the commissioners' courts have fixed the precincts, and the election has been held, it ought not to be set aside because they have failed to make each ward in a city an election precinct, unless it be shown that they have acted with a fraudulent purpose."

In Warren v. Robinson, (1930), Texas Civ. App., 32 S.W. 2d 871, no writ history, it is said:

"The legality of a political subdivision of a county cannot be assailed in an election contest or any other collateral proceeding. Such attacks are amply provided for in proper proceedings. Allegations as to the bounds of the district or any attack upon the formation of the district were properly stricken from the petition. Trimmier v. Carlton (Texas Civ. App.) 264 S.W. 253; Bassel v. Shanklin (Texas Civ. App.) 183 S.W. 105. In Turner v. Allen (Texas Civ. App.) 254 S.W. 630, 636, the court said: 'In a contested election proceeding, only such matters as happen on the day of election and pertain strictly to the election may be inquired into or determined by the district court, and, under this rule of law, the action of the commissioners' court in changing the boundaries of commissioner's precinct No. 4, as they did, could not be inquired into or considered by the trial court.' "

Regarding the judgments of commissioners' courts, this Court in Yoakum County v. Gaines County, 139 Texas 442, 163 S.W. 2d 393, 396, said:

"Our courts have repeatedly held that the judgments of commissioners' courts, in all matters over which they are given jurisdiction, are entitled to the same consideration as those of other courts provided for by the Constitution; and that such judgments are not subject to collateral attack, and are reviewable only upon appeal or in a direct action for that purpose, in the absence of a showing of gross abuse of discretion, or of fraud or collusion or lack of jurisdiction. Tarrant County v. Shannon, 129 Texas 264, 104 S.W. 2d 4; West Production Co. et al v. Penn, Texas Civ. App., 131 S.W. 2d 131, writ refused; Ashburn Bros. v. Edwards County, Texas Com. App., 58 S.W. 2d 71; 11 Texas Jur., pp. 566, 567, Secs. 39, 40."

■ To the third question we answer "No." The case of Reynolds v. Cobb, (1946), Texas Civ. App., 196 S.W. 2d 60, 63, no writ history, effectively disposes of the appellees' contention that the votes of those 57 voters who received their poll taxes from the tax collector of Kent County at Jayton, Texas, on January 31, 1952, after 6:00 p.m., and not at the office of the tax collector in the courthouse of Kent County in Clairemont, Texas, were void. It is said in the above case:

"* * * appellant's contention being that the poll tax receipts issued by the deputies were void as a qualification for voting, because of the manner of appointment of the deputies and the fact that the taxes were paid and the receipts issued at places in the City of Dallas other than the Collector's office or places previously designated for the collection of said taxes. To this we cannot agree; we do not think the poll tax receipt, as evidence of the right to vote, is valid, or invalid, dependent upon the particular place where it was issued; the holder of such a tax receipt, otherwise qualified, is privileged to vote without regard to the place where the tax was paid and the receipt issued. There is no provision of either Constitution or statute declaring that a tax receipt issued under such circumstances is in any sense invalid. All that the Constitution, sec. 2, Art. 6, Vernon's Ann. St., requires, is that the voter shall have paid the tax before offering to vote, and hold a receipt showing that he paid the same before the first day of February next preceding the election.

"In the case of Warren v. Robinson, Texas Civ. App., 32 S.W. 2d 871, 872, it appeared that certain voters had not paid for their

poll tax receipts, the same having been paid by others. The court said the law does not render invalid poll tax receipts paid by others than the voters, and that a qualified voter has a right to vote, regardless of how he may have obtained the receipt, if he was qualified under the law to obtain the receipt; that the disqualification must attach to the voter himself; and when in possession of a poll tax receipt, he has the right to vote. Also see Wallis v. Williams, 50 Texas Civ. App. 623, 110 S.W. 785, 786."

Opinion delivered July 7, 1954.

Rehearing overruled October 6, 1954.