

# The Attorney General of Texas

**JIM MATTOX**
Attorney General

Supreme Court Building
P. O. Box 12548
Austin, TX. 78711- 2548
512/475-2501
Telex 910/874-1367
Telecopier 512/475-0266

714 Jackson, Suite 700
Dallas, TX. 75202-4506
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905-2793
915/533-3484

1001 Texas, Suite 700
Houston, TX. 77002-3111
713/223-5886

806 Broadway, Suite 312
Lubbock, TX. 79401-3479
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501-1685
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205-2797
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

April 4, 1986

Honorable Clint Hackney
Chairman
Committee on Elections
Texas House of Representatives
P.O. Box 2910
Austin, Texas    78769

Opinion No.  JM-467

Re:  Location of polling plac
and residency requirements f
election judges in city counc
election

Dear Representative Hackney:

You ask two questions about an election for members of the Al
City Council scheduled for April 5, 1986.  The city is under a fede
court order to cease at-large election of city council members and
adopt a plan that includes the election of five city council membe
by district and two at large.  The city is phasing in the new pla
You inform us that the city council has named election judges who
not reside in the district to which they are assigned.  Moreover, t
city has not established a polling place in each district which wi
elect a city councilman.

You request an opinion on the following questions:

1.  In a municipal election, does the election
of a council member from a district require that
the polling place be located within the district?

2.  In a municipal election, does the law
require that the election judge be a registered
voter living within the boundaries of the
district?

We cannot provide an exhaustive answer to your first questio
Whether the polling places were designated for the April 5 election
compliance with the Election Code depends in part upon the fact
Some facts have been submitted to us, but an Attorney General Opini
may not make the additional fact findings necessary to a comple
answer to this question.  Moreover, the requirements of the Feder
Voting Rights Act, 42 U.S.C. §1971, et seq., are also relevant to yo
inquiry.  The requirements of this act may in some cases prevail ov
the provisions of state law.  We lack sufficient information abo
court orders issued under the Voting Rights Law that would modify t
application of Election Code provisions to this election.  See, e.g
Attorney General Opinion MW-350 (1981).  However, the court order
which the city is subject will control its duty with respect to th

particular election.  We will discuss the relevant provisions of law to provide some guidance to you.

With this caveat, we turn to your first question.  Under the Election Code, the precinct, and not the city election district, is the geographical unit within which a polling place is established.  A single polling place is to be located within each precinct.  Elec. Code §43.001.  The city council has authority to determine where the polling place will be located within the precinct.  Elec. Code §43.004; see Elec. Code §1.005(13) (defining "political subdivision" to include a city).

The city council also has some authority to establish election precincts for city council elections, but the city's election precincts "may not divide a county election precinct except as necessary to follow the city's boundary."  Elec. Code §42.061(c).  Thus, the city's election precincts are virtually determined by the county's election precincts established pursuant to the Election Code.  See Attorney General Opinion H-232 (1974).

The commissioners court is to divide the county into "compact and contiguous" election precincts.  Elec. Code §42.001.  Section 42.005 of the code establishes the relationship between county election precincts and single member districts for the election of city councilmen:

> (a)  A county election precinct may not contain territory from more than one of each of the following types of territorial units:
>
> (1)  a commissioners precinct;
>
> (2)  a justice precinct;
>
> (3)  a congressional district;
>
> (4)  a state representative district;
>
> (5)  a state senatorial district;
>
> (6)  a ward in a city with a population of 10,000 or more; or
>
> (7)  a State Board of Education district.
>
> . . . .
>
> (c)  In this section, 'ward' means a territorial unit of a city, regardless of its designation under

other law, from which a member of the city's gover-
ning body is elected by only the voters residing in
the territorial unit.   (Emphasis added).

Elec. Code 42.005.

The Election Code authorizes the commissioners court to change
the boundaries of county election districts to make them conform to
city election districts. See Elec. Code §§42.031-42.035. You have
not informed us whether the county has attempted to change election
precinct boundaries to accommodate the new city election districts, or
whether there was sufficient time between the issuance of the court
order and the April 5 election date to fulfill the statutory require-
ments for changing a boundary. See Elec. Code §42.003(b).

Moreover, the Federal Voting Rights Act, 42 U.S.C. §1971 et seq.,
might prevent the commissioners court from complying with Election
Code deadlines in changing an election precinct boundary to conform to
a new city election district. Changes in election precinct boundaries
and in the locations of polling places are subject to preclearance by
the Attorney General of the United States. 42 U.S.C. §1973c; Perkins
v. Matthews, 400 U.S. 379, 380-83 (1971); County Council of Sumter
County, South Carolina v. United States, 555 F.Supp. 694 (D.C.D.C.
1983); Heggins v. City of Dallas, 469 F.Supp. 739, 740 (N.D. Texas
1979); see Attorney General Opinion MW-350 (1981). See also Acts
1985, 69th Leg., ch. 340, at 2589 (county election precincts are not
required to conform to city election districts if compliance is
impracticable because of a federal court order).

To summarize, authority rests with the county commissioners
court, and not the city council, to redraw election precinct lines to
conform with city wards or election districts. See Attorney General
Opinion H-282 (1974). We cannot determine whether the statutes
discussed prevent or excuse the county from redrawing the precinct
lines in time for the April 5 election; the application of those
statutes to a specific case requires the investigation and resolution
of fact questions.

The city council is required to locate the polling place within
the established election precinct, and voters are required to vote
within the precinct in which they reside. Elec. Code §11.003;
Harrison v. Jay, 271 S.W.2d 388, 389 (Tex. 1954). Election laws,
however, are construed as directory in absence of fraud or a mandatory
provision which requires voiding a ballot for failure to comply with a
statute. Thomas v. Groebl, 212 S.W.2d 625, 630-31 (Tex. 1948);
Statler v. Fetzer, 630 S.W.2d 782, 783-84 (Tex. Civ. App. - Houston
[1st Dist.] 1982, writ dism'd). Election law provisions which relate
to voters are more readily construed as directory than those relating
to candidates. Branaum v. Patrick, 643 S.W.2d 745, 749 (Tex. Civ.
App. - San Antonio 1982, no writ).

The courts have in most cases strictly construed the section 11.003 requirement that all voters vote in the precinct in which they reside. Harrison v. Jay, 271 S.W.2d 388, 389 (Tex. 1954); Greater Bauxart Garden Municipal Utility District v. Cormier, 596, S.W.2d 597, 600-01 (Tex. Civ. App. - Beaumont 1980, no writ); Zuniga v. Almaraz, 514 S.W.2d 331, 334 (Tex. Civ. App. - San Antonio 1974, no writ). There are, however, exceptions to the strict construction of this provision. Ex parte White, 28 S.W. 542, 544 (Tex. Crim. App. 1894); Anderson v. Crow, 260 S.W.2d 227, 233-34 (Tex. Civ. App. - Austin 1953, mand. overr.); Attorney General Opinion O-1303 (1939).

You next ask whether the law requires that the election judge in a municipal election be a registered voter living within the boundaries of the district. Chapter 32 of the Election Code deals with the appointment and qualifications of election judges. The provisions of a home rule city charter supersede or supplement some of the code provisions. See Elec. Code §§32.011, 32.035, 32.056. Alvin is a home rule city and its charter provisions on elections will have to be read together with the Election Code.

Sections 32.051 through 32.056 of the Election Code govern eligibility requirements for election judges. These provisions constitute subchapter C of chapter 32 of the Election Code. Section 32.051 provides as follows:

> (a) Except as provided by Subsection (b), to be eligible to serve as a judge of an election precinct, a person must be a qualified voter of the precinct.
>
> (b) If the authority making an emergency appointment of a presiding judge cannot find an eligible qualified voter of the precinct who is willing to accept the appointment, the eligibility requirement for a clerk prescribed by Subsection (c) applies.
>
> (c) To be eligible to serve as a clerk of an election precinct, a person must be a qualified voter;
>
> . . . .
>
> (3) of the political subdivision, in an election ordered by an authority of a political subdivision other than a county. (Emphasis added).

A home rule city charter may prescribe eligibility requirements or grounds of ineligibility in addition to those prescribed in subchapter C for election officers serving in elections ordered by an

authority of the city.  Elec. Code §32.056; see §§32.052 (public officer ineligible); 32.053 (candidate for public office ineligible); 32.054 (relative or employee of candidate ineligible).  Under section 32.051, the person appointed as a city election judge must be a qualified voter of the precinct, unless he is appointed under the emergency provision.  Section 32.007 of the Election Code defines an "emergency appointment" under chapter 32:

> (a)  If neither the presiding judge nor the alternate presiding judge can serve in an election and their inability to serve is discovered so late that it is impracticable to fill the vacancy in the normal manner, the presiding officer of the appointing authority or the authority if a single officer shall appoint a replacement judge to preside at the election.  If the appointing authority is unavailable, the authority responsible for distributing the supplies for the election shall appoint the replacement judge.

Elec. Code §32.007.  Under the circumstances described here, the city may appoint a qualified voter as election judge, subject to other eligibility provisions in the city charter applicable to an emergency appointee.  Whether an order under the federal Voting Rights Act affects the operation of these provisions at the April 5 election in Alvin is a question beyond the scope of this opinion.

## S U M M A R Y

> Section 43.004 of the Election Code provides that a polling place for a municipal election should be located within the election precinct. Section 32.051 of the Election Code requires that the election judge be a registered voter of the election precinct he serves as judge.  Section 32.051 of the Election Code also provide for appointment of a registered voter in an emergency as defined by section 32.007 of the Election Code. The provisions of the Federal Voting Rights Act may in some cases prevail over the provisions of the Texas Election Code.

Very truly yours

J I M   M A T T O X
Attorney General of Texas

JACK HIGHTOWER
First Assistant Attorney General

MARY KELLER
Executive Assistant Attorney General

ROBERT GRAY
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Susan L. Garrison
Assistant Attorney General