TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-98-00217-CV







Bob Honts and Herman "Tex" Moten, Sr., Appellants



v.



Jim Shaw and Mark A. Wallace, Appellees







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT


NO. 98-03024, HONORABLE RICK MORRIS, JUDGE PRESIDING








 Appellants Bob Honts and Herman "Tex" Moten, Sr., filed an election contest
challenging the outcome of the Republican primary election held on March 10, 1998, for the
Republican nomination of County Commissioner, Precinct Two and Precinct Chairman, Election
Precinct 250. The district court rendered judgment upholding the election and declaring appellee
Jim Shaw as the Republican nominee for County Commissioner and appellee Mark A. Wallace
as Election Precinct 250 Chairman. We will affirm the trial court's judgment.


THE CONTROVERSY


 The following matters are uncontested. On December 1, 1997, Patrick O'Grady
became Travis County Republican Party primary administrator for the primary election scheduled
for March 10, 1998. On December 1, 1997, Patrick McNamara became deputy primary
administrator. 

 O'Grady and McNamara began recruiting election workers in early December by
sending mailings to previous precinct chairs from the 1996 election, soliciting assistance to serve
as election workers and to find other volunteers. Despite their efforts, it became apparent by
January 1998 that they were experiencing difficulty in recruiting enough election workers to staff
the polling places in all election precincts fixed by the county commissioners court. See Tex.
Elec. Code Ann. § 42.002 (West Supp. 1998).

 In a meeting held January 13, 1998, the Travis County Republican Party Executive
Committee, of which Republican County Chairperson Jan Galbraith was a member, delegated
authority to O'Grady to "appoint election judges at his discretion . . . without the approval of the
executive committee to facilitate the process" and "to make any and all decisions regarding the
location and possible consolidation of some of the precinct polling places." O'Grady made
McNamara responsible for Commissioner's Precincts Two and Three, and he made two other part-time employees in the office responsible for Precincts One and Four. 

 O'Grady continued to aid McNamara and the other part-time employees in their
efforts to secure polling places and election workers. Problems persisted nevertheless. These
problems were not unlike those encountered by the Democratic Party. The Travis County
Commissioners Court had formed numerous new election precincts in Commissioner's Precinct
Two, and a disproportionately high number of boundary changes affecting Precinct Two made it
more difficult to secure polling places in each precinct. The Travis County Clerk's office agreed
to aid both the Republican and Democratic parties in their efforts to find polling places in each
precinct, but was unsuccessful in locating polling places of sufficient size in some precincts. In
addition, attempts were made to recruit additional volunteers from precincts that had their full
quota of election workers. In the end, however, the efforts of O'Grady, McNamara, and others
were less than successful.

 O'Grady decided it was necessary to join some of the polling places. He attempted
to join polling places based upon geographic proximity, tried to avoid joining three polling places
together, attempted to join polling places where extra workers were available, and worked to join
precincts with lower numbers of registered voters. Election precincts in different commissioner's
precincts were not joined. By election day, nineteen polling places out of sixty-six were joined
in Commissioner's Precinct Two. Notice of the joined precincts was effectuated by two
newspaper listings of polling places for Precinct Two in the Austin American-Statesman and by
posting at previous polling places within the election precincts. The first newspaper listing on
March 8, 1998, was correct. The newspaper listing on election day, March 10, was correct except
for a partial error pertaining to Election Precincts 233 and 249. At previous polling places,
particularly those used in the November 1996 election, notices were posted informing the voters
of the polling place for the March 10 Republican Party primary election. The postings were not
systematic, however, and notices were not posted in all the nineteen precincts that were joined. 

 O'Grady prepared a list of joined precincts to post on the bulletin board next to the
Travis County Commissioners Court by February 17, 1998, which Chairperson Galbraith signed. 
After a discussion with an employee of the election division of the clerk's office on February 17,
however, O'Grady concluded there was no legal requirement to post notice of the joined precincts
at the County Commissioners Court. Consequently, he did not post the notice.

 Appellants adduced some evidence that O'Grady and McNamara held personal
opinions favoring certain Republican candidates over others and that their political views were
more conservative. The trial court found, however, that there was no evidence that their views
or opinions influenced their actions as primary officials. The court concluded that neither
O'Grady nor McNamara intended to mislead any voters or attempted to give any unfair advantage
to a particular candidate. The court held specifically that there was no fraud or malicious motive
on the part of either O'Grady or McNamara, and that there was no evidence that the election was
unfair. Accordingly, the court concluded that there was no reason to void the election.


DISCUSSION AND HOLDINGS


Subject-Matter Jurisdiction 

 In two cross-points of error, appellees assert that the trial court lacked jurisdiction
to hear appellants' election contest on two grounds: (1) appellants failed to deliver a copy of their
petition to the Secretary of State in violation of section 232.008(d) of the Texas Election Code
(Election Code); and (2) appellants failed to secure a trial setting within five days of the date by
which appellees were required to answer the petition in violation of section 232.012(d) of the
Election Code. The trial court found that the deadlines prescribed by sections 232.008(d) and
232.012(d) of the Election Code were not jurisdictional and concluded that appellants' failure to
comply with the requirements did not deprive the court of jurisdiction.

 Appellees contend the procedural requirements for a contested election are
mandatory because they exist only by and to the extent authorized by statute. See State v. City of 
Azle, 588 S.W.2d 666, 670 (Tex. Civ. App.--Fort Worth 1979, writ ref'd n.r.e.) (holding failure
to comply with thirty-day notice requirement barred attack on election). Relying on cases decided
on the basis of notice provisions in an earlier version of the Election Code, requiring that notice
of intent to contest be served on the winner of the election, appellees argue that notice to the
Secretary of State under section 232.008(d) is also mandatory and jurisdictional and, therefore,
cannot be waived. See Jordan v. Norman, 711 S.W.2d 358, 359 (Tex. App.--Beaumont 1986,
no writ); Mitchell v. Carroll Indep. Sch. Dist., 435 S.W.2d 280, 283 (Tex. Civ. App.--Fort
Worth 1968, writ dism'd w.o.j); see also Ex parte Progreso Indep. Sch. Dist., 650 S.W.2d 158,
160 (Tex. App.--Corpus Christi 1983, writ ref'd n.r.e.); Walker v. Thetford, 418 S.W.2d 276,
280 (Tex. Civ. App.--Austin 1967, writ ref'd n.r.e.). As to the setting of the trial date, appellees
also argue that strict compliance is required under section 232.012(d) of the Election Code;
however, appellees have not cited any authority in support of this jurisdictional claim.

 Section 232.008 of the Election Code provides in pertinent part: "A contestant
must deliver a copy of the petition to the secretary of state by the same deadline prescribed for the
filing of the petition." Tex. Elec. Code Ann. § 232.008(d) (West Supp. 1998). Unlike the notice
provisions of the former Election Code considered in the decisions relied upon by appellants,
section 232.008(d), which was added by amendment in 1997, requires notification of a non-party
to the contest for informational purposes only. While Texas courts have held some filing
requirements mandatory and jurisdictional, the decisions, including those relied upon by
appellants, have involved either the court-filing deadline or notice of the filing to the contestee.
See Jordan, 711 S.W.2d at 359; Ex parte Progreso Indep. Sch. Dist., 650 S.W.2d at 160;
Mitchell, 435 S.W.2d at 283; Walker, 418 S.W.2d at 280.

 Further, under the former Election Code, article 9.36 provided that failure to
contest the election within the time prescribed would result in a presumption that the election
results were valid and binding on the courts. See Mitchell, 435 S.W.2d at 283. Thus, the court
concluded in Mitchell that failure to comply with the filing deadline required dismissal for lack of
jurisdiction. Id. Section 232.008(d) of the Election Code does not specify the consequence for
non-compliance. The Texas Supreme Court has held that when a statute does not specify the
consequences for failing to give a required notice, the courts must look to the purpose of the
statute for guidance. See Hines v. Hash, 843 S.W.2d 464, 468 (Tex. 1992); see also Chisholm
v. Bewley Mills, 287 S.W.2d 943, 945 (Tex. 1956) ("If the statute directs, authorizes or
commands an act to be done within a certain time, the absence of words restraining the doing
thereof afterwards or stating the consequences of failure to act within the time specified, may be
considered as a circumstance tending to support a directory construction."). In Hines, the court
held that failure to give written notice at least thirty days before filing a Deceptive Trade Practices
Act action pursuant to the statutory requirements did not require dismissal of suit when the
purpose of the statute could best be served by abatement. Id. at 468-69. 

 The Secretary of State requested the 1997 amendment to section 232.008 of the
Election Code, which resulted in the addition of subsection (d). The Secretary's purpose in
requesting the amendment was to ensure that the chief elections officer of the State was informed
of any election contests, not to create a jurisdictional prerequisite to either bringing or maintaining
an election contest. Because the purpose of section 232.008(d) was to provide notice to the
Secretary of State for informational purposes only, we conclude that appellants failure to timely
notify the Secretary of State, pursuant to the statute, did not deprive the trial court of subject-matter jurisdiction. 

 The same reasoning applies to appellees' jurisdictional claim regarding section
232.012(d) of the Election Code. Section 232.012 provides in pertinent part:


 (d) After the clerk receives the officer's return showing service of citation,
the clerk shall promptly notify the district judge of that fact. The judge shall set
the contest for trial for a date not later than the fifth day after the date by which the
contestee must answer.



Tex. Elec. Code Ann. § 232.012(d) (West 1986). The language of section 232.012(d) is not
unlike the statute at issue in State v. $435,000, 842 S.W.2d 642, 642 (Tex. 1992), which required
that "after the State initiated a forfeiture action and a claimant filed a verified answer to recover
the property, 'a time for hearing on forfeiture shall be set within 30 days.'" The Texas Supreme
Court determined that the issue was not whether use of the term "shall" was mandatory, but what
consequences followed a failure to comply. Id. at 644. Noting that the purpose of the statute was
to compel the trial court to hear the case promptly, the supreme court concluded that the statute
afforded the parties a right to so compel the trial court to hear the case promptly. Id. The
supreme court refused, however, to extend a sanction of dismissal as a result of the trial court's
failure to set the case, not only because it did not follow the purpose of the statute, but also
because the language of the statute did not specify a consequence for the court's failure to act
within the time prescribed under the statute. Id. 

 Here, too, the language of section 232.012(d) of the Election Code compels the trial
court to set the election contest for trial within a specific period of time. We agree that dismissal
of the contest action would not serve the purpose of the statute, and we hold that failure to comply
does not deprive the trial court of subject-matter jurisdiction. Accordingly, we overrule appellees
two cross-points of error.


Election Code Violations 

 In their sole point of error, appellants contend the primary administrator, O'Grady,
and his deputy, McNamara, violated mandatory provisions of the Election Code, requiring
automatic invalidation of the election. They argue that the trial court erred in concluding that the
violations did not affect the outcome of the election because, they assert, the violations were
numerous, constituted more than minor deviations from the requirements of the Election Code,
were done with knowledge and intent, and were done without proper authority.

 In their brief and in oral argument, the parties discuss the applicability of several 
provisions of the Election Code, including section 43.001, and they do not dispute its strict
requirements. Section 43.001 provides that "[e]ach election precinct established for an election
shall be served by a single polling place located within the boundary of the precinct." Tex. Elec.
Code Ann. § 43.001 (West 1986) (emphasis added). Section 43.001 has two statutory exceptions,
consolidation under section 42.009 and combining under section 42.0051. See id. §§ 42.009,
.0051 (West Supp. 1998). Pursuant to section 42.009, the executive committee of a political party
holding a primary election is granted authority to "order two or more county election precincts
consolidated into a single precinct." Id. at 42.009 (emphasis added). Section 42.0051 grants the
executive committee authority to combine county election precincts when changes in county
election precinct boundaries, caused by a redistricting plan, result in precincts with less than 500
(or 750 in some instances) registered voters. See id. § 42.0051.

 In this instance, the primary administrator joined the polling places of a total of
nineteen election precincts as a result of a shortage of polling places and election workers. 
Consequently, the polling places for several election precincts were fixed outside the boundaries
of those precincts, in violation of section 43.001 of the Election Code. Further, the justification
and method for joining the precincts do not fall within either statutory exception to section 43.001. 
The precincts themselves, however, remained separate, both in terms of their identities and their
record-keeping, thereby excluding them from consolidation under section 42.009 of the Election
Code. Nor were the precincts "combined" as a result of a redistricting plan; the primary
administrator simply joined certain polling places due to the fact that he could not find a polling
place or election workers for those precincts; the joining of the nineteen polling places therefore
did not constitute combining of precincts under section 42.0051 of the Election Code. We
conclude that the primary administrator's joining of the nineteen election precinct polling places 
violated section 43.001 insofar as polling places were not within the boundaries of a precinct.

 Appellants also complain that the primary administrator joined the polling places
without proper authority. Section 43.003 of the Election Code provides in pertinent part that
"[t]he county chair of a political party holding a primary election shall designate the location of
the polling place for each election precinct in the primary . . . ." Id. § 43.003 (West Supp. 1998)
(emphasis added). This statutory grant of authority cannot be delegated. See generally, Countz
v. Mitchell, 38 S.W.2d 770, 774 (Tex. 1931) ("If the duty of calling the election in question
devolved upon the county board of trustees, then that agency, and it alone, was authorized to fix
the time and place for holding such election. It could not delegate the performance of this duty
to the county judge of the county." (Emphasis added.)). The record reflects that the executive
committee, which included Chairperson Jan Galbraith as a member, appeared to delegate to
O'Grady the authority to make all decisions regarding the location of the precinct polling places
in its January 13, 1998 meeting. The record also reflects, however, that Galbraith executed a list
of the joined polling places for posting on February 17, 1998. The list was prepared by O'Grady,
but Galbraith acted to designate the polling places by signing the list. The fact that the list was
never posted does not render Galbraith's formal designation invalid. Therefore, the trial court
could reasonably conclude that by executing the list of joined polling places for posting on
February 17, Galbraith retained ultimate authority in the matter and did not violate section 43.003.

 Having concluded that the primary administrator and other Republican Party
officials violated section 43.001 of the Election Code, we must nonetheless affirm the judgment
of the trial court. Courts have generally held that statutes regulating the manner of holding an
election are directory in the sense that their violation does not justify an order setting aside the
election. See Prado v. Johnson, 625 S.W.2d 368, 369-70 (Tex. Civ. App.--San Antonio 1981,
writ dism'd w.o.j.); Little v. Alto Indep. Sch. Dist., 513 S.W.2d 886, 891 (Tex. Civ. App.--Tyler
1974, writ dism'd w.o.j.); see also Sawyer v. Bd. of Regents of Claredon Junior College, 393
S.W.2d 391 (Tex. Civ. App.--Amarillo 1965, no writ); Minthorn v. Hale, 372 S.W.2d 752 (Tex.
Civ. App.--Beaumont 1963, no writ); Scott v. McLennan County, 306 S.W.2d 943 (Tex. Civ.
App.--Waco 1957, writ ref'd n.r.e.); Baker v. Scranton Indep. Sch. Dist., 287 S.W.2d 210 (Tex.
Civ. App.--Eastland 1956, no writ); Kincannon v. Mills, 275 S.W. 1083 (Tex. Civ. App.--Waco
1925, writ dism'd w.o.j.). In the nineteen election precincts whose polling places were joined,
1,048 qualified voters cast their ballots with the assumption that their votes would be counted in
the March 10, 1998 Republican party primary election. "[C]ourts should not disfranchise the . . .
voters because an official failed to follow the strict letter of the [Election] [C]ode." Alvarez v.
Espinoza, 844 S.W.2d 238, 243 (Tex. App.--San Antonio 1992, writ dism'd w.o.j.). While we
do not approve an election official's violation of section 43.001 or any other procedural
requirement, we recognize in this instance that "a sanction for the sins of the . . . official should
not [be] visited upon the voter." Id.


 The purpose of the [Election] Code is to prohibit error, fraud,
mistake, and corruption, and yet it may not be used as an instrument
of disfranchisement for irregularities of procedure. Since the will
of the legal voters as expressed at the polls is the matter of
paramount concern, and, in the absence of any showing of fraud, or
reasonable indication that such will has not been fairly expressed
and the evidence thereof properly preserved, the courts have been
liberal in construing and enforcing as directory only the provisions
of the election laws which are not upon their face clearly
mandatory.



Prado, 625 S.W.2d at 369-70; see also Deffebach v. Chapel Hill Indep. Sch. Dist., 650 S.W.2d
510, 512 (Tex. App.--Tyler 1983, no writ).

 Section 221.003 of the Election Code provides that the tribunal hearing an election
contest shall attempt to ascertain whether the outcome of the contested election is not the "true
outcome" because either (1) "illegal votes were counted," or (2) an election officer "prevented
eligible voters from voting," "failed to count legal votes," or "engaged in other fraud or illegal
conduct or made a mistake." Tex. Elec. Code Ann. § 221.003 (West 1986). (1) The contestant
bears the burden of proving that violations occurred and that they materially affected the outcome
of the election. See Guerra v. Garza, 865 S.W.2d 573, 576 (Tex. App.--Corpus Christi 1993,
writ dism'd w.o.j.); Alvarez, 844 S.W.2d at 242; Green v. Reyes, 836 S.W.2d 203, 208 (Tex.
App.--Houston [14th Dist.] 1992, no writ). "The standard of review for an appeal from a
judgment in an election contest is whether the record shows that the trial court abused its
discretion." Guerra, 865 S.W.2d at 576 (citing Green, 836 S.W.2d at 208; Goodman v. Wise,
620 S.W.2d 857, 859 (Tex. Civ. App.--Corpus Christi 1981, writ ref'd n.r.e.)).

 Courts have held that illegal votes are not to be counted when violations of certain
provisions of the Election Code result from voter action. See Harrison v. Jay, 271 S.W.2d 388,
389 (Tex. 1954) (illegal votes resulting from voters voting in a different precinct in violation of
section 11.003 of the Election Code excluded); (2) Alvarez, 844 S.W.2d at 247-48 (votes cast by
nonresidents in violation of section 1.015 of Election Code were not counted); Green, 836 S.W.2d
at 208 (votes cast by same voter in both Republican Party primary and Democratic Party primary
runoff election held to be illegal); Chumney v. Craig, 805 S.W.2d 864, 870 (Tex. App.--Waco
1991, writ denied) (contestant failed to show that votes were illegal, i.e., that votes were cast by
persons who did not own property); Medrano v. Gleinser, 769 S.W.2d 687, 688 (Tex.
App.--Corpus Christi 1989, no writ) (votes cast by unqualified voters and voters who lived
outside the Commissioner's precinct were illegal). Violations of directory provisions stemming
from the conduct of election officials, however, do not result in illegal votes. See Alvarez, 844
S.W.2d at 242-243 (election officials' violations of sections 32.006, 87.002, 13.038 and 13.039
did not justify voiding election because provisions violated were directory); Prado, 625 S.W.2d
at 369-70 (violation by election officials of statutory procedures under Election Code held to be
directory and will not render election void absent showing of fraud). Because section 43.001 is
directory and dictates procedures that the election official must follow, its violation did not result
in illegal votes being counted. (3)

 Having concluded that no illegal votes were counted, section 221.003 of the
Election Code requires us to examine the actions of the election officials who violated section
43.001 of the Election Code. First, we find insufficient evidence in the record tending to show
that any eligible voters were prevented from voting. See Tex. Elec. Code Ann.
§ 221.003(a)(2)(A). The trial court specifically found that no witness testified he was prevented
from voting. This finding is not challenged on appeal. (4) Second, the record contains no evidence
that election officials failed to count legal votes. See id. § 221.003(a)(2)(B). Third, the
contestants have not alleged that any election official engaged in "illegal conduct." See id.
§ 221.003(a)(2)(C). Assuming appellants properly alleged O'Grady and McNamara acted with
a fraudulent purpose, the trial court, in its findings of fact and conclusions of law, found that the
reasons for joining the election precinct polling places were not fraudulent and that O'Grady and
McNamara's personal opinions did not "influence any of their official actions in discharge of their
duties as primary officials." The court concluded that "there was no fraud or malicious motive
and no evidence that the election was unfair." Appellants do not challenge the sufficiency of these
findings of fact and conclusions of law on appeal. Although the Election Code does not define the
term "mistake," we hold that the mistake contemplated by the statute must be one of such
magnitude as to affect the true outcome of the election; under the circumstances of the present
case, the violation of section 43.001 does not constitute such a mistake within the meaning of
section 221.003(a)(2)(C). Were we to conclude otherwise, there would be no difference under the
Election Code in the legal consequences of a violation of a directory statute versus a violation of
a mandatory statute.

 Appellants have not shown that the violation of section 43.001 of the Election Code 
affected the outcome of the election, and the trial court's findings and conclusions regarding the
same are not challenged on appeal. (5) Therefore, we conclude that the trial court did not abuse its
discretion in holding that the violations were not grounds for setting aside the election results. We
overrule appellants' sole point of error.


CONCLUSION


 We overrule all points of error and cross-points and affirm the trial court's
judgment. Pursuant to section 232.014(e) of the Election Code, we will not entertain a motion for
rehearing.



 

 J. Woodfin Jones, Justice

Before Justices Powers, Jones and Dally (6)

Affirmed

Filed: September 8, 1998

Publish
1. Section 221.003 of the Election Code governs the court's scope of inquiry in an election
contest, providing in relevant part:


 (a) The tribunal hearing an election contest shall attempt to ascertain whether the
outcome of the election contest, as shown by the final canvass, is not the true
outcome because:


 (1) illegal votes were counted; or


 (2) an election officer or other person officially involved in the
administration of the election:


 (A) prevented eligible voters from voting;


 (B) failed to count legal votes; or


 (C) engaged in other fraud or illegal conduct or made a mistake.


 (b) In this title, "illegal vote" means a vote that is not legally countable.


Tex. Elec. Code Ann § 221.003 (West 1986).
2. In Harrison v. Jay, the Texas Supreme Court recognized an exception to section 11.003 of
the Election Code, created by case law, where votes cast at a polling place outside the boundaries
of an election precinct have been allowed and counted as legal votes when "the whole of the
qualified electors voting at the election all voted at the same polling place." 271 S.W.2d 388, 389
(Tex. 1954); see also Boroughs v. Williamson, 312 S.W.2d 717, 720-21 (Tex. Civ. App.--El Paso
1958, writ dism'd w.o.j.) (stating that supreme court in Harrison indicated that "if all of the voters
went across the line and voted where the judges had set up the voting box, that it might consider
those votes legal").
3. The dissenting portion of Judge Powers's opinion seems to be based almost exclusively on
a perceived violation of section 11.003 of the Election Code, which provides that " a person may
vote only in the election precinct in which the person resides." Tex. Elec. Code Ann. § 11.003
(West 1986). That provision is not applicable here. Section 11.003 is not, it seems to us,
intended to regulate the geographical location of a polling place or ballot box, but rather was
intended to prevent voters from voting in a precinct election different from the one in which they
are entitled to vote according to their residence. For example, a voter who resides in hypothetical
precinct 1 may not vote in a precinct 2 election. All of the cases cited by Judge Powers involved
voters who cast their ballots in a precinct election other than the correct one for the precinct of
their residence. That did not happen here. There were separate ballot boxes for each precinct
(even though some of them were in the same location), and there is no indication that any voters
put their ballots in the wrong box. This is not a violation of section 11.003. Indeed, none of the
parties to this election contest have raised or discussed section 11.003 in any way, shape, or form.
4. Findings of fact which are not challenged on appeal are binding on the parties and the
reviewing court. See Guerra v. Garza, 865 S.W.2d 573, 575 (Tex. App.--Corpus Christi 1993,
writ dism'd w.o.j.).
5. Even if appellants had challenged the sufficiency of the trial court's findings of fact and
conclusions of law on appeal, we conclude from our examination of the record that such findings
of fact and conclusions of law are supported by competent evidence and are therefore binding on
this Court. See Deffebach v. Chapel Hill Indep. Sch. Dist., 650 S.W.2d 510, 512 (Tex.
App.--Tyler 1983, no writ); Vandyke v. Austin Indep. Sch. Dist., 547 S.W.2d 354 (Tex. Civ.
App.--Austin 1977, no writ).
6. Before Carl E. F. Dally, Judge (retired), Court of Criminal Appeals, sitting by assignment. 
See Tex. Gov't Code Ann. § 74.003(b) (West 1988).



EF="#N_6_"> (6)

Affirmed

Filed: September 8, 1998

Publish
1. Section 221.003 of the Election Code governs the court's scope of inquiry in an election
contest, providing in relevant part:


 (a) The tribunal hearing an election contest shall attempt to ascertain whether the
outcome of the election contest, as shown by the final canvass, is not the true
outcome because:


 (1) illegal votes were counted; or


 (2) an election officer or other person officially involved in the
administration of the election:


 (A) prevented eligible voters from voting;


 (B) failed to count legal votes; or


 (C) engaged in other fraud or illegal conduct or made a mistake.


 (b) In this title, "illegal vote" means a vote that is not legally countable.


Tex. Elec. Code Ann § 221.003 (West 1986).
2. In Harrison v. Jay, the Texas Supreme Court recognized an exception to section 11.003 of
the Election Code, created by case law, where votes cast at a polling place outside the boundaries
of an election precinct have been allowed and counted as legal votes when "the whole of the
qualified electors voting at the election all voted at the same polling place." 271 S.W.2d 388, 389
(Tex. 1954); see also Boroughs v. Williamson, 312 S.W.2d 717, 720-21 (Tex. Civ. App.--El Paso
1958, writ dism'd w.o.j.) (stating that supreme court in Harrison indicated that "if all of the voters
went across the line and voted where the judges had set up the voting box, that it might consider
those votes legal").
3. The dissenting portion of Judge Powers's opinion seems to be based almost exclusively on
a perceived violation of section 11.003 of the Election Code, which provides that " a person may
vote only in the election precinct in which the person resides." Tex. Elec. Code Ann. § 11.003
(West 1986). That provision is not applicable here. Section 11.003 is not, it seems to us,
intended to regulate the geographical location of a polling place or ballot box, but rather was
intended to prevent voters from voting in a precinct election different from the one in which they
are entitled to vote according to their residence. For example, a voter who resides in hypothetical
precinct 1 may not vote in a precinct 2 election. All of the cases cited by Judge Powers involved
voters who cast their ballots in a precinct election other than the correct one for the precinct of
their residence. That did not happen here. There were separate ballot boxes for each precinct
(eve