

## NUMBER 13-14-00303-CV

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

RICHARD BIANCHI,                                                    Appellant,

v.

THE STATE OF TEXAS,                                                Appellee.

### On appeal from the 343rd District Court
### of Aransas County, Texas.

# O P I N I O N

### Before Chief Justice Valdez and Justices Perkes and Longoria
### Opinion by Chief Justice Valdez

Richard Bianchi appeals the district court's judgment rendered for the State of Texas—acting by and through Michael E. Welborn, the District Attorney of Aransas County—declaring that Bianchi is "unlawfully holding [the] office" of County Attorney of Aransas County and ordering Bianchi removed from office effective "immediately," pursuant to the Texas quo warranto statute. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§

66.001–.003 (West, Westlaw through 2013 3d C.S.). By previous order, the Court stayed the district court's judgment. *See* TEX. R. APP. P. 43.6. For the reasons stated herein, *see* TEX. R. APP. P. 47.1, the Court now reverses the district court's judgment and renders a take nothing judgment against the State. *See* TEX. R. APP. P. 43.2(c).

## I. BACKGROUND

Before the bench trial was held in this cause, the parties executed and filed with the district court a written stipulation regarding the facts relevant to the case, which are not in dispute. The written stipulation and the exhibits that were attached to the stipulation were admitted into evidence during the bench trial. The stipulation and exhibits reflect the following facts.

The voters of Aransas County duly elected Bianchi for a second term of office as County Attorney, which began on January 1, 2013 and will end on December 31, 2016. In June of 2013, when there remained more than one year and thirty days in his unexpired term of office, Bianchi announced his intention to run for the Aransas County Court at Law. On June 24, 2013, Bianchi appeared before an open session of the Aransas County Commissioners Court and informed the Commissioners Court that he was running for the County Court at Law position and that his candidacy operated as a constructive resignation of his office under the resign-to-run provision of the Texas Constitution. *See* TEX. CONST. art. XVI, § 65(b). Bianchi also advised the Commissioners Court that they had the power to appoint his replacement who would serve as interim County Attorney until his successor was duly qualified.[1] Bianchi further advised the Commissioners Court

---

[1] *See* TEX. CONST. art. V, § 21 ("In case of vacancy the Commissioners Court of the county shall have the power to appoint a County Attorney until the next general election."); TEX. LOC. GOV'T CODE ANN. § 87.041(a)(5) (West, Westlaw through 2013 3d C.S.) ("The commissioners court of a county may fill a vacancy in the office of . . . county attorney.").

that if they did not appoint his successor, he was obligated to remain and serve as the holdover County Attorney pursuant to the holdover provision of the Texas Constitution, until his successor was duly qualified. *See id.* art. XVI, § 17. The minutes to the June 24, 2013 meeting were attached to the parties' written stipulation, marked as "Exhibit A" thereto, and admitted into evidence at trial.

The Commissioners Court took no action to replace Bianchi. Bianchi continued to execute his duties as County Attorney, but he remained an active candidate for the position of Judge of the County Court at Law.

On January 8, 2014, the District Attorney sent a letter to the Commissioners Court advising that he had "received numerous inquiries and/or complaints about the current status of the Aransas County Attorney's Office." In the letter, the District Attorney asserted that "Bianchi resigned his position as County Attorney when he announced . . . his intentions to seek election to the position of Judge of the Aransas County Court at Law." *See id.* art. XVI, § 65(b). The letter advised that the holdover provision of the Texas Constitution "does not apply to vacancies created by operation of the Texas Constitution." *See id.* art. XVI, § 17. In the letter, the District Attorney recognized that "[t]here does exist an Attorney General's opinion that opines that the 'Hold over' provision does apply to the 'resign to run' provision." However, the District Attorney stated that "Attorney General opinions are only advisory." The District Attorney's letter concluded with three paragraphs, quoted below, in which he (1) admitted the Commissioners Court had not violated the Constitution or laws of the State of Texas, (2) suggested that the Commissioners Court was using their position of power to manipulate the upcoming

3

elections, and (3) threatened to commence an action in quo warranto to remove Bianchi from office:

> While the Commissioner's Court failure or refusal to take action on seeking a qualified applicant for the position of Aransas County Attorney may not be technically violating the Constitution and laws of the State of Texas, such non action certainly violated the spirit of the "resign to run" law, as provided by the Texas Constitution and brings into question whether the members of the Aransas County Commissioner's Court are preserving, protecting and defending the Constitution and laws of the State of Texas.

> Additionally, it is becoming harder and harder for me in my position to convince concerned citizens of Aransas County that the Aransas County Commissioner's Court is not actively utilizing their position of power to manipulate the upcoming elections.

> If requested I am prepared to file an action in Quo Warranto . . . to procure a judicial determination as to whether the "hold over" provisions of Article 16, Section 17 of the Texas Constitution do apply to a resignation of office under Article 16, Section 65 of the Texas Constitution. However, appropriate action by the Aransas County Commissioner's Court could resolve this matter without additional time and expense for all parties involved.

On January 14, 2014, C.H. "Burt" Mills Jr., the County Judge of Aransas County, sent a letter responding to the District Attorney. In the letter, County Judge Mills informed the District Attorney that the Commissioners Court had "consulted with outside counsel, selected by [the] Texas Association of Counties, regarding these issues and the possible appointment of an interim County Attorney to serve until the election." In relevant part, County Judge Mills stated in his letter as follows:

> [There are] . . . three Attorney General opinions—all reaching the same result. When an officer constructively resigns by running for another office, he holds over until his successor is appointed and qualifies. DM-377(1996) JC-0318(2000) and GA-0500(2007). How in the world could following the opinions of every Attorney General to consider the subject and our own outside counsel be anything other than preserving and defending the laws of Texas?

County Judge Mills also stated the following in his letter:

4

I am confident that the Constitution as interpreted by several Attorney Generals authorizes Mr. Bianchi to remain as a hold over County Attorney with all powers of office until his successor is elected and qualifies. I am equally confident that the Election Code grants the Commissioner's Court the discretion to decide whether to appoint an interim replacement or let the voters decide. I know I have made an informed and well reasoned decision to let the voters decide.

Also attached to the parties' written stipulation and admitted into evidence at trial were the minutes of a meeting held by the Commissioners Court on February 10, 2014. The minutes contain the following passage relevant to this case:

## <u>SUCCESSOR COUNTY ATTORNEY AFTER PRIMARY</u>

Judge Mills stated, "The Court has discussed with our legal counsel the appointment procedure for the County Attorney position, and I believe we should defer any action pending the outcome of the electoral process. In the meantime, I personally reject the threats of action and feel that my decision is in accordance with my legal responsibilities under [Local] Government Code Section 87.041. Additionally, if the District Attorney wants to file a lawsuit against someone, I feel he should just file against the Commissioners' Court."

Commissioner Smith asked the following taken from a letter dated February 6, 2014, from County Attorney Richard P. Bianchi be entered in the Court's minutes – "You have and continue to act in accordance with the law. However, a change of circumstances may be nearing that should be considered. There is no candidate in the Democrat Primary, so the winner of the Republican Primary on March 4 will be the likely replacement. When you are able to determine the final winner of the Republican Primary, that such candidate is able to assume office, and also reasonably determine there will be no independent candidate, circumstances warrant a reassessment of appointing my replacement," Smith also stated [the] Commissioners' Court has had a history of appointing candidates when there is no other candidate for a position.

Also on February 10, 2014, the District Attorney filed this quo warranto action to remove Bianchi from the office of County Attorney. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 66.001–.003. Thereafter, Bianchi filed a motion to dismiss under Rule 91a of the Texas Rules of Civil Procedure, which the district court denied. *See* TEX. R. CIV. P. 91a.

5

According to the parties' written stipulation, on March 4, 2014, there were two political candidates for the office of Aransas County Attorney in the Republican primary: Steve Fisher and Kristen Blanford. Blanford won the Republican primary. There were no candidates in the Democratic primary.

Attached to the parties' written stipulation and admitted into evidence was an undated, joint letter from Bianchi and Blanford stating in relevant part as follows:

> Now that the primary elections are over, we believe this is an appropriate time to suggest a transition plan for your consideration. Although our plan can be implemented under the existing authority and budget of County Attorney Richard Bianchi, it is fully understood that [the] Commissioners' Court has the authority to alter that plan at any time by appointing a successor to Bianchi.
>
> In all probability, Kristen Blanford will be the next Aransas County Attorney. Although Ms. Blanford's election does not require her to take office until January 1, 2015, an orderly and gradual transition would best serve the needs of Aransas County citizens. Effective March 31, 2014 Ms. Blanford will begin a temporary assignment as Assistant County Attorney, working an average of 20 hours per week. This temporary arrangement will allow Ms. Blanford to fulfil her existing obligations to her law firm and clients. As she winds down her law practice, the hours she will work as Assistant County Attorney will proportionately increase. At some point this year, Ms. Blanford anticipates that the requirements of her private law practice will be reduced to a degree that she will be able to advise [the] Commissioners' Court that she is available for full-time assignment as County Attorney. Again, we both recognize fully that when and if Ms. Blanford is appointed County Attorney prior to January 1, 2015 is solely within the discretion of [the] Commissioners' Court and Ms. Blanford.

The parties' written stipulation also stated that at a meeting of the Commissioners Court held on March 24, 2014, Bianchi and Blanford spoke to the Commissioners in an open session, explaining the contents of their joint letter. The Commissioners Court asked Blanford if she was able to accept the appointment now, and she answered no. The Commissioners Court then asked Blanford if she knew when she would be able to accept the appointment, and she answered that she did not. She advised the

6

Commissioners Court that she would notify the Commissioners Court when she was able to do so.

Thereafter, Bianchi continued as County Attorney, and Blanford began working part-time as Assistant County Attorney, as contemplated in the joint letter she and Bianchi submitted to the Commissioners Court. To this day, Bianchi continues to serve as County Attorney.

The case proceeded to a bench trial in May of 2014. At the outset of the trial, the district court admitted into evidence the parties' written stipulation and the exhibits attached to the stipulation.

The first witness called by the State was Bianchi. He testified that he is currently serving a four year term in the position of County Attorney for Aransas County. The State asked Bianchi to confirm that as "county attorney [he] has basically two functions, you're the advisor to the commissioners court" and "you're also the State's prosecuting attorney in the county court at law," and Bianchi agreed.

Bianchi further testified that in the first week of June of 2013, he advised the citizens of Aransas County that he was going to run for the position of Judge of the County Court at Law of Aransas County. Bianchi testified that although he did not file a written resignation, "[i]t's always been understood and discussed that I voluntarily resigned in accordance with the law in June when I announced for county court at law." Bianchi testified, "I am still the county attorney with the full authority and responsibilities of that office . . . ." He is still being paid as the County Attorney and is still receiving all the benefits from that position.

7

On cross examination, Bianchi testified that he contacted the Office of the Texas Attorney General in his effort to research what would happen if he announced his candidacy while holding the office of County Attorney. He testified, "The attorney general's office simply told me that they, in fact, did have opinions relevant." Bianchi continued:

> They then referred me . . . over to the Secretary of State's Office, the elections division. I contacted the State Ethics Commission, they merely referred me to the Secretary of State's Election Division, and I contacted the Secretary of State's Election Division.
>
> They were very helpful. We discussed the process. We discussed the AG opinions, and that for me was confirming or, if you will, that gave me the most comfort out of all of the conversations I had.
>
> It's always good in my mind to have a second opinion, if you will, and I had -- after reviewing the publications[2] myself, then discussing it with the elections division was -- was the confirming point in time for me.
>
> . . . .
>
> [A]ny of the publications that I've talked about discussed resign to run and holdover, if not in the same breath, at least in the same page. And certainly I did form an opinion that that was applicable to the situation, and that even if I wished at that point in time to go out and campaign full-time, I couldn't, that I was required by the Constitution to remain in office until other provisions were made for my replacement.
>
> . . . .
>
> [T]here's two choices: One, is wait until the voters speak again, which my understanding was from reading the materials we've discussed, that would be at the November election; or commissioners court, and this was very significant to me obviously because I was surrendering -- I was a countywide elected official, [the] commissioners court had no authority over me in terms of my staying or going, and I was, by my voluntary resignation, voluntarily changing that status to where they would make their own decision about that, and as I thought appropriate if I didn't perform

---

[2] Bianchi testified that he "consulted Brooks Books Texas Practice, the series . . . on county law," which he described as "certainly the desk manual, if you will, for county attorneys." Then, he consulted "manuals . . . produced by the Texas Association of Counties that deal with issues such as this, and also publications by the attorney general's office," including "some of the attorney general opinions."

8

appropriately from that point forward. So I placed my fate in their hands, if you will, as far as continuing as county attorney.

Next, the State called Alma Cartwright, the County Treasurer for Aransas County, who confirmed that Bianchi is still being paid a salary by Aransas County at this time for serving as County Attorney.

Finally, the State called County Judge Mills. On direct examination, the State asked County Judge Mills to explain the situation regarding the replacement of Bianchi as County Attorney:

> Q. Has the commissioners court in Aransas County ever taken any action regarding appointment of any individual to the county attorney's office since Mr. Bianchi has tendered his automatic resignation in June of 2013?
>
> A. No.
>
> Q. Okay. Does the Court intend to take any action in that regards, Your Honor?
>
> A. Yes.
>
> Q. Have you ever publicly stated to anyone that the commissioners court, let's see, are satisfied with Mr. Bianchi's work and you see no reason to replace him until his term as judge starts?
>
> A. I don't recall saying it like that. I -- I have said that, yes.
>
> Q. You kind of said that?
>
> A. Well, I -- I think I probably said that he will be -- serve until the -- the person that won the primary was ready to take office. Or if I didn't say it that way, that's the way I meant it.
>
> . . . .
>
> Q. But there is no replacement and there's nothing pending to replace Mr. Bianchi at this time; is that correct, Judge?
>
> A. Nothing pending, no.
>
> . . . .

9

THE COURT: There's been testimony that [the] commissioners court by a four person majority made the decision to allow Mr. Bianchi to stay on and not try to replace him, at least anytime soon; is that a fair statement?

THE WITNESS: That's a fair statement -- well, no.

THE COURT: No?

THE WITNESS: We've never acted on Mr. Bianchi's resignation.

THE COURT: Yeah, but -- but -- well, there's a four member majority that is not pushing to replace him, would that be fair to say?

THE WITNESS: (No verbal answer.)

THE COURT: What's the state of affairs on the court right now in terms of replacing him?

THE WITNESS: I'm speaking for myself, but I believe that we're waiting to see when his replacement is ready to take office. And when she states that, then, we will put it on the agenda and act from there.

. . . .

Q. [I]s anybody else being considered for the possibility of appointment to the county attorneys office?

A. No.

. . . .

THE COURT: Okay. Okay. Is this the kind of thing commissioners court puts on the agenda and talks about?

It's been I guess, what, 11 months since he stepped down or, you know, filed for the office. In the 11 months since that's -- you know, this has been going on, has the Court put it on the docket and talked about it again?

THE WITNESS: No, we feel that -- or I feel, and evidently the rest of the Court feels, that Mr. Bianchi is doing a good job as county attorney and why do you need to replace somebody that's doing a good job.

After the State had presented its case-in-chief, Bianchi presented two witnesses.

The first witness, Brian Keith Ingram, is an attorney licensed to practice law in the State

of Texas and is currently employed as the Director of the Elections Division of the Texas Secretary of State's Office. We quote Director Ingram's testimony at length because it is uniquely relevant and provides an excellent overview and discussion of the parties' respective arguments and conflicting interpretations of the issues of Texas law we must decide in this case. *See* TEX. R. APP. P. 47.1.

On direct examination, Director Ingram testified in relevant part as follows:

Q. And what is the duty of the Secretary of State's Office Elections Division?

A. The Secretary of State of Texas is the chief elections officer for the State of Texas and she has a division that assists her with that responsibility known as the elections division, and I am the director of that division.

That division is charged with obtaining and maintaining uniformity and the interpretation, application and operation of election laws inside the Election Code as well as election laws outside of the Election Code. And we perform that duty by -- I call it technical assistance for elections in Texas.

We answer questions from the public as well as from election officials in counties, cities, schools and other political subdivisions. We also assist the legislature whenever they're considering amendments to the Election Code or election laws outside of the Election Code.

Q. In your duties as director of the elections division, do you have occasion to opine with regard to Article 16, Section 17 and 65?

A. Yes, sir.

. . . .

Q. How are those, Section 17 and Section 65, applicable to the Secretary of State in your job specifically?

A. Occasionally we will get calls from persons who are currently officeholders covered by Article 16, Section 65 who are interested in knowing what actions have to be taken in order to trigger its provisions and what happens once they've done an automatic resignation.

Also occasionally we will get calls from county commissioners or county judges asking about filling a vacancy because someone has announced

11

their intention to run for another office. You know, they'll ask about when this has to be done and what the procedure is for filling a vacancy.

. . . .

Q. Are you familiar with the purposes of Section 65 and how it is -- it jives with Section 17?

A. I am familiar with it as it's been expressed in the attorney general opinions, specifically DM-377. Apparently there was a time in the '50s when county officeholder terms were extended to four years and shortly thereafter Article 16:65 was put in place.

It's my understanding that Article 16, Section 17 predated that, that it's been the law for a good long while. I don't know if it's been since the beginning but long before the '50s.

Q. How does the Secretary of State's Office harmonize those two provisions?

A. Sure. If -- what we tell candidates is that if they announce their intention to run for another office they are effectively resigning immediately from their current office if they do so where there is still a year and 30 days left in their term, and so they are putting themselves, you know, at risk.

The Article 16, Section 17, though, we tell them requires that they hold their office and continue to do the duties thereof until their successor is qualified. So that's the way that we harmonize it.

What we tell the county commissioners and county judges is that they have resigned, there is a vacancy and you can fill that vacancy whenever you need to do it. You can do it any time. There is not a time limit for when it has to be done and there aren't specific procedures other than it requires a majority of the commissioners court.

Q. Is there a conflict between 65 and 17?

A. No, there is not.

Q. And why is that?

A. Because in Article 16, Section 65 resignation is like any other resignation. When you resign you've got a duty to holdover. Any -- any officer in the State of Texas has a constitutional obligation to continue performing the function.

So if it's a -- let's suppose that Regent Wallace on the University of Texas Board of Regents, let's suppose that he resigns, he will continue to holdover and attend regents meetings until the Governor replaces him and his successor takes the oath of office.

On cross examination by the State, Director Ingram testified in relevant part as follows:

Q. You haven't talked about the one aspect of the resign to run that says -- the public policy is you're not going to stay in office campaigning while you're campaigning for another position?

A. Well, I thought I did. I thought --

Q. Can you explain that for me?

A. I thought I did. That was the whole point of Article 16, Section 65 so that somebody who's now -- they've had their terms lengthened to four years, they can't run for office for four years.

The most that will happen now is by the end of the next even numbered year somebody else will be in the spot.

Do you understand?

. . . .

Q. Okay. Well, the DM-377 seems to be the one that everyone wants to hang their hat on.

Do you remember a segment in that, it talks about the fact regarding the underlying policy that Section 65 was created, that the underlying policy will be effectuated when the officer's replacement is appointed and qualifies, do you remember that being in DM-377?

A. No, not exactly, but -- but if it says it, it -- that's not what Article 16, Section 17 says. It says until the successor is qualified. The successor can be qualified by winning an election and taking the oath or by being appointed and taking the oath. There's a couple of ways. Until a successor is qualified, the current officer will continue in the position.

Q. Mr. Ingram, let me just ask you, how many times -- how many phone calls do you all get regarding this issue of Resign to Run and Holdover Provision?

13

A. A lot.

Q. A lot. And one of the reasons behind that is the last attorney general, Greg Abbott, has said that a court of competent jurisdiction has never resolved the issue; isn't that correct?

A. I don't know about that. I do know that -- that government officials all over the State rely on the attorney general opinions in cases like this, the statutory and constitutional interpretation where there is not a court case.

Q. Okay. So if I were to tell you that GA-0550 from the attorney general's office says, "While the courts have established that an officer who tenders his resignation continues to serve as a holdover officer, no court has addressed whether the same principles apply to an officer whose resignation is constructive under article XVI, section 65."

You wouldn't dispute that that's what the -- so that basically says we just don't really absolutely know because no court's ever determined it yet; isn't that correct?

A. No, I wouldn't agree with that. We --

Q. You wouldn't agree with that?

A. We don't have a court decision on it but that doesn't mean we don't know.

. . . .

Q. Anyway, you still feel there is conflict there, sir?

A. Not a conflict, no, and as the opinion goes on to say, ". . . the policy animating article XVI, section 17 -- continuity in the functioning of government -- applies whether a qualified officer's resignation is actual or constructive under article XVI, section 65."

. . . .

Q. Well, what does -- what does that mean, Mr. Ingram, continuity in governmental functions?

A. Well, as you can imagine, Texas has 160 or so counties that have less than ten thousand people, and so in an office like judge or county attorney or district attorney there is not a large pool of lawyers for those counties. And so if someone has constructively resigned or automatically resigned under Article 16, Section 65 and they're willing to keep doing the duties because they don't have another job to go to, then it is in the interest of the

14

citizens, according to Article 16, Section 17 of the Constitution, to keep that person in office while they wait for their successor so that there is not a gap in service.

A lot of district attorney posts in this -- in this state have one person in the office. County attorneys are the same way.

. . . .

Q. I'm sorry, sir. I didn't mean to interrupt you.

A. It's just that Article 16, Section 65 doesn't apply to statewide officeholders. It doesn't apply to a lot of things. It's a discrete list of things and those things are the things that -- that trigger an automatic resignation.

. . . .

Q. I guess one of the ways you can solve that is by appointing the person that resigned, right?

A. No.

Q. You can't do that, can you?

A. You can't do that.

Q. Why not?

A. Because that would -- that would -- that would, I mean, that would defeat the whole purpose of the Article 16, Section 65.

Q. So --

A. And so DM-377 specifically answers that question.

Q. And it says, you cannot put back into office the same person that is not allowed to be there because they're campaigning for another job?

A. It says that you can't fill the vacancy with someone who is already constructively resigned under Article 16, Section 65, that's right.

Q. Article 65 is the resign to run, correct?

A. And so the way for a county commissioner to do that is to let them continue in office without replacing them, and that's what we tell county judges all the time.

15

Q. That's what you tell them?

A. That's what we tell them.

Following Director Ingram's testimony, Bianchi called Charles Smith, a current member of the Commissioners Court, to testify as a witness on his behalf. On direct examination, Commissioner Smith was asked why he had "not moved to have the commissioners court appoint a replacement for Mr. Bianchi." Commissioner Smith responded, because we "thought he was doing a great job." Commissioner Smith proceeded to explain:

> I don't know whether we could have found another person in our county that would have done that or could have even qualified for that or be willing to do that.
>
> So I didn't, you know, I just didn't see a need to change something or work on something that was -- was not broken.
>
> . . . .
>
> I just didn't basically just didn't think it was in the best interest of the citizens here. We had a -- we had a county attorney that was functioning at a high level and I didn't see a need to change particularly if, in fact, it was left to our discretion at that point in time. He has a good working relationship.

With respect to appointing Blanford to replace Bianchi, Commissioner Smith testified: "Hey, if she were available today and had indicated to me that she was ready to take office, I would have certainly moved, I would have supported that issue."

Both sides rested, and the district court heard closing arguments. The State argued that "there's a lot of questions about the law. It has not been resolved. Attorney general's opinion says it hasn't been resolved. Cases say it hasn't been resolved." The State argued that there was a conflict in the Texas Constitution:

16

[I]s there a loophole in the Resign to Run Provision? . . . I don't think that's what was intended in Article 16, Section 17. I know that's not what was intended in Article 16, Section 65. It creates a potential loophole. We need to basically close that loophole, Judge . . . . The only way they get harmonized, if you would, is if the appointing body that is authorized to act actually acts and a successor is appointed and replaces, and that person is out of office, he's not sitting there drawing from the payroll of the county, he's not sitting there campaigning while he's running for another job.

Next, the district court heard from Bianchi:

Judge, this is a lawsuit in quo warranto where Mr. Welborn has to prove that Mr. Bianchi is usurping or unlawfully holding office.

He is the elected county attorney for Aransas County, he is continuing to fulfill that duty as he's required to do by the Constitution of the State of Texas, and so he's not unlawfully holding his office.

His best argument would be he's usurping it, he has not pled that. But I don't think that the evidence shows that he's usurping it nor does the caselaw support the situation.

There are really no facts that are controverted in this case. This is purely a question of law for you to rule upon. The facts are stipulated and the facts, again, have been proved by the testimony here today that Mr. Bianchi announced to run, that that announcement in effect triggered Section 65, that he continues to serve as he is required to do under Section 17, and that the county commissioners court have deemed in their discretion and what they think is best for local government to not appoint a replacement at this time. And they have done that because the person that is the most likely person to be replaced is not yet available, and that is the county attorney elect who is completing her obligations she has to her law firm, her clients and her family.

So the question becomes, and really is, is . . . there a conflict between Section 17 and Section 65?

Mr. Welborn would have the Court believe there is. Mr. Ingram testified at length about how there is not.

All four of the attorney general opinions that we gave you addressed the harmony between the two sections and if I could read from 377, it talks about the Resign to Run versus the -- the Holdover Provision. . . . [W]hat the attorney general has done in its opinion in 377, it has deemed that there is a limited application to Section 65.

17

And it says, "The limited application of the automatic resignation requirement suggests that it may be less weighty than other, more generally applicable, constitutional provisions."

"Under the circumstances" -- well, "Moreover, the policy underlying section 65 will still be effectuated when the officer's replacement is appointed and qualifies."

"Under the circumstances" -- which are just like what we have here -- ["]Under the circumstances, we believe we should give great weight to the public policy encompassed in . . . section 17 -- the preservation of the orderly processes of government. Accordingly, an officer who automatically resigns an office pursuant to . . . section 65 will hold over in office pursuant to . . . section 17 until a successor is appointed and qualifies."

And they affirm several other prior attorney general opinions.

And what the law is, Judge, if one automatically resigns, as Mr. Bianchi did, he is required, he is mandated by the Constitution, Section 17, by the attorney general's opinions who cite some cases and there is one old case prior to '65, which is a *Planes* case, but then the *Crawford* case is post the amendment of '65.

He is required to stay in the office and continue to serve . . . .

. . . .

Judge, this 377 is cited time after time in other opinions. In 2000, 2007, Dan Morales said it, John Cornyn said it, Greg Abbott has said it. Everybody has used 377 as the mother lode of the AG opinions.

And as I was saying, Judge, we are unfamiliar with any legal authority that would support Mr. Welborn's argument, and unless it's in this new brief he just dropped on us.

He wants you to judiciously -- judicially legislate and change 87.041, he wants you to judicially amend the Constitution and say that you have to adhere to if you resign to run, then you don't have to stay, and that is totally contrary to the law.

So in conclusion, Your Honor, if -- if we needed to change the law, you do it through the legislative process, through the constitutional amendment process, you don't do it by filing a quo warranto which was designed to primarily remove people from office who refused to vacate their office and wanted to stay.

18

> Not in a situation where you have the county attorney, who based on the advice he got from the attorney general's office, the Secretary of State's Office, his own legal research, the Texas Association of Counties, et cetera, et cetera, all told him without exception he was required to stay there.

> And so if Mr. Welborn has a beef with somebody, he needs to go sue the Aransas County Commissioners Court and try to mandamus them into appointing a replacement.

> The law is Mr. Bianchi has to stay.

The district court rendered a judgment for the State stating that "Bianchi has resigned from office, he is no longer entitled to hold over, and he is therefore unlawfully holding office under . . . [Section 66.001(1) of the Texas Civil Practice and Remedies Code]." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 66.001(1). The district court ordered Bianchi removed from office effective "immediately." *See id.* § 66.003(1). The district court denied the State's request for attorney's fees "because the Texas statutes do not allow them in this situation." The district court also declined to assess a fine. After Bianchi timely filed his notice of appeal, the Court stayed the district court's judgment pending final resolution of the appeal. *See* TEX. R. APP. P. 43.6.

On Bianchi's request, the district court entered findings of fact and conclusions of law in support of its judgment, describing this as "a case of first impression" and noting that "no Texas case has discussed the interaction" between the Texas Constitution's resign-to-run and holdover provisions or "attempted to harmonize them." *See* TEX. R. CIV. P. 296 & 297.

The purpose of the resign-to-run provision, according to the district court, is to ensure officeholders give their undivided attention to their offices by prohibiting them from campaigning for a different office at any time except the last year of their term. *See* TEX.

19

CONST. art. XVI, § 65(b).[3]  The purpose of the holdover provision, the district court explained, is to ensure against vacancies in office, to preserve the orderly processes of government, and to promote continuity in the functioning of government.  *See id.* art. XVI, § 17.

The district court concluded that when an official has constructively resigned under the resign-to-run provision, the holdover provision "permits the official to stay on the job for a reasonable time to prevent cessation of the functions of government."  *See id.* art. XVI, §§ 17 & 65(b).  The district court concluded that when the resign-to-run provision has been triggered, "the actions of an officeholder and the appointing authority which invoke . . . [the holdover provision] are subject to judicial review in a quo warranto suit."  *See id.*; TEX. CIV. PRAC. & REM. CODE ANN. §§ 66.001–.003.  According to the district court, "the appointing authority or officeholder must present evidence that the purpose of [the holdover provision] . . . is being pursued by his continuation in office."  The district court concluded the resign-to-run provision must "be given [controlling] effect unless there is credible evidence that the goals of . . . [the holdover provision] are being served."  *See* TEX. CONST. art. XVI, §§ 17 & 65(b).

Based on the evidence presented at trial, the district court found that the holdover provision "is not being employed to serve its undisputed purposes."  *See id.* art. XVI, § 17.  According to the district court, the "Commissioners Court has not replaced Bianchi . . . for reasons other than the proper reasons for allowing an officer to hold over."  *See id.*  Based on the foregoing, the district court found that "Bianchi has resigned from the office

---

[3] We note the district court relied extensively on opinions issued by the attorney general, which though "not binding," are "often persuasive."  *In re Smith*, 333 S.W.3d 582, 588 (Tex. 2011).

of County Attorney of Aransas County, and he no longer holds that office." *See id*. art. XVI, § 65(b).

## II. ANALYSIS

Bianchi raises five issues on appeal. In one, he challenges the legal sufficiency of the evidence to support the district court's judgment finding that he unlawfully holds the office of County Attorney. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 66.001(1); *City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005). We address this issue first because a successful challenge to the legal sufficiency of the evidence would require the Court to reverse the district court's judgment and render a take nothing judgment against the State, which is the greatest relief Bianchi would be potentially entitled to if he succeeds in this appeal. *See* TEX. R. APP. P. 47.1; *AutoZone, Inc. v. Reyes*, 272 S.W.3d 588, 595 (Tex. 2008) (sustaining challenge to legal sufficiency of evidence and rendering take nothing judgment).[4]

**A. Standard of Review**

"A trial court's findings are reviewable for legal and factual sufficiency of the evidence by the same standards that are applied in reviewing evidence supporting a jury's answer." *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994). In a legal sufficiency review, "all the evidence is reviewed in the light most favorable to the finding." *State v. K.E.W.*, 315 S.W.3d 16, 25–26 (Tex. 2010). "Disputed facts are resolved in favor of the finding if a reasonable factfinder could have done so, and all contrary evidence is disregarded unless a reasonable factfinder could not have done so." *Id*. at 26.

---

[4] In his appellate brief, Bianchi "abandons his counterclaim alleging the lawsuit is frivolous so that judgment may be rendered on appeal."

21

A legal sufficiency challenge will be sustained when the record confirms either: (a) a complete absence of a vital fact; (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (c) the evidence offered to prove a vital fact is no more than a mere scintilla; or (d) the evidence conclusively establishes the opposite of the vital fact. *City of Keller*, 168 S.W.3d at 819. "What might otherwise be a question of fact becomes one of law when the fact is not in dispute or is conclusively established." *Reliance Nat. Indem. Co. v. Advance'd Temporaries, Inc.*, 227 S.W.3d 46, 50 (Tex. 2007).

"We review a trial court's legal conclusions de novo." *In re M.P.A.*, 364 S.W.3d 277, 289 (Tex. 2012). "A legally correct judgment based on findings of fact made after a trial on the merits cannot be set aside on appeal if the findings are supported by sufficient evidence." *IKB Indus. (Nigeria) Ltd. v. Pro-Line Corp.*, 938 S.W.2d 440, 442 (Tex. 1997).

**B. Rules of Interpretation**

Interpretations of the Constitution, like those of statutory law, are reviewed de novo. *Fin. Com'n of Tex. v. Norwood*, 418 S.W.3d 566, 579 (Tex. 2013). "When we interpret our state constitution, we rely heavily on its literal text and must give effect to its plain language." *Stringer v. Cedent Mortg. Corp.*, 23 S.W.3d 353, 355 (Tex. 2000). "We strive to give constitutional provisions the effect their makers and adopters intended." *Id*. "We avoid a construction that renders any provision meaningless or inoperative." *Id*.

**C. Applicable Law**

"A writ of quo warranto is an ancient common-law writ that gave the king an action against a person who claimed or usurped any office, franchise, or liberty, to inquire by what authority that person supported the claim to hold office." *Bexar Metro. Water Dist.*

22

*v. City of Bulverde*, 156 S.W.3d 79, 86 (Tex. App.—Austin 2004, pet denied). "In the modern context, the State may use a quo warranto action to challenge the authority to engage in certain practices specifically enumerated by statute." *Id.* The Texas Supreme Court has explained that a "writ of quo warranto is an extraordinary remedy available to determine disputed questions about the proper person entitled to hold a public office and exercise its functions." *State ex rel. Angelini v. Hardberger*, 932 S.W.2d 489, 490 (Tex. 1996). Thus, "quo warranto proceedings are those through which the State acts to protect itself and the good of the public generally, through the duly chosen agents of the State who have full control of the proceeding." *Fuller Springs v. State ex rel. City of Lufkin*, 513 S.W.2d 17, 19 (Tex. 1974).

Chapter 66 of the Texas Civil Practice and Remedies Code provides that an action in the nature of quo warranto is available if a person unlawfully holds office. TEX. CIV. PRAC. & REM. CODE ANN. § 66.001(1). "If the person against whom the information is filed is found guilty as charged, the court . . . shall enter judgment removing the person from office . . . ." *Id.* § 66.003(1).

At the heart of this dispute is the resign-to-run provision of the Texas Constitution, which states in relevant part as follows:

> If any of the officers named herein [including County Attorneys] shall announce their candidacy, or shall in fact become a candidate, in any General, Special or Primary Election, for any office of profit or trust under the laws of this State or the United States other than the office then held, at any time when the unexpired term of the office then held shall exceed one year and 30 days, such announcement or such candidacy shall constitute an automatic resignation of the office then held, and the vacancy thereby created shall be filled pursuant to law in the same manner as other vacancies for such office are filled.

23

TEX. CONST. art. XVI, § 65(b).[5]  The other key constitutional provision is the holdover

provision, which states as follows:  "All officers within this State shall continue to perform

the duties of their offices until their successors shall be duly qualified."  *Id.* art. XVI, § 17.

The Texas Constitution and Local Government Code contain provisions for filling

vacancies in the office of County Attorney. The Texas Constitution states in relevant part,

"In case of vacancy the Commissioners Court of the county shall have the power to

appoint a County Attorney until the next general election."  *Id.* art. V, § 21.  Finally, the

Texas Local Government Code provides, "The commissioners court of a county may fill

a vacancy in the office of . . . county attorney."  TEX. LOC. GOV'T CODE ANN. § 87.041(a)(5).

## D. Discussion

On appeal, Bianchi argues the evidence is legally insufficient to support the district

court's finding that he is guilty of unlawfully holding the office of County Attorney.  *See*

---

[5] We note that the United States Supreme Court has previously determined that the resign-to-run provision does not "violate the Equal Protection Clause of the Fourteenth Amendment."  *Clements v. Fashing*, 457 U.S. 957, 959, 970 (1982).  In *Clements*, the Court thoroughly considered the scope and effect of the "automatic resignation" provision.  *Id.* at 960.  The Court also explained the origins of the provision consistent with Director Ingram's testimony:

> The history behind § 65 shows that it may be upheld consistent with the "one step at a time" approach that this Court has undertaken with regard to state regulation not subject to more vigorous scrutiny than that sanctioned by the traditional principles.  Section 65 was enacted in 1954 as a transitional provision applying only to the 1954 election.  Section 65 extended the terms of those offices enumerated in the provision from two to four years. The provision also staggered the terms of other offices so that at least some county and local offices would be contested at each election.  The automatic resignation proviso to § 65 was not added until 1958.  In that year, a similar automatic resignation provision was added in Art. XI, § 11, which applies to officeholders in home rule cities who serve terms longer than two years.  Section 11 allows home rule cities the option of extending the terms of municipal offices from two to up to four years.

> Thus, the automatic resignation provision in Texas is a creature of the State's electoral reforms of 1958.

*Id.* at 970–71.

24

TEX. CIV. PRAC. & REM. CODE ANN. § 66.001(1); *City of Keller*, 168 S.W.3d at 819. We agree.

The record does not support the district court's finding that Bianchi is guilty of unlawfully holding the office of County Attorney. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 66.001(1); *City of Keller*, 168 S.W.3d at 819. The undisputed evidence establishes that Bianchi (1) was duly elected to the office of County Attorney, (2) has been duly qualified for the office, (3) has taken the oath of office, (4) has assumed and continuously occupied the office under the color of law, (5) continues to exercise, and be recognized by the Commissioners Court in exercising, the power and authority of the office, (6) has a certain amount of time that is readily-determinable remaining in the unexpired term of office to which he was duly elected, (7) has constructively resigned from office by announcing his candidacy for a different position, (8) has not been replaced by another individual selected in the general election to fill the vacancy created by his constructive resignation, (9) has not been replaced by the Commissioners Court, which as the parties agree, has the power and discretion to fill the vacancy, and (10) is performing the duties of the office of County Attorney under the Texas Constitution's holdover provision, until his successor is duly qualified. *See* TEX. CONST. art. XVI, §§ 17 & 65(b); *id.* art. V, § 21; TEX. LOC. GOV'T CODE ANN. § 87.041(a)(5); *City of Keller*, 168 S.W.3d at 815 ("[A]n appellate court conducting a legal sufficiency review cannot disregard undisputed evidence that allows of only one logical inference.") (quotations omitted).

Given the foregoing undisputed evidence, the only conclusion that we can reach is that the State wholly failed to prove its case that Bianchi is unlawfully holding the office of County Attorney. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 66.001(1); *City of Keller*,

25

168 S.W.3d at 815. The evidence establishes conclusively that Bianchi is lawfully holding the office of County Attorney until his successor is duly qualified, as stated in the Texas Constitution and as explained in several attorney general opinions. *See* TEX. CONST. art. XVI, § 17 ("All officers within this State shall continue to perform the duties of their offices until their successors shall be duly qualified."); *see also* TEX. ATTY. GEN. OP. NO. DM–377 (1996) ("[A]n officer who automatically resigns an office pursuant to article XVI, section 65 will hold over in office pursuant to article XVI, section 17 until a successor is appointed and qualifies.").

Bianchi's constructive resignation under the resign-to-run provision was automatic. *See* TEX. CONST. art. XVI, § 65(b). However, the resignation, like others, is subject to the holdover requirement and is thus only effective to vacate the office for some purposes. *See id.* art. XVI, §§ 17 & 65(b); *see also Crawford v. State*, 153 S.W.3d 497, 503 (Tex. App.—Amarillo 2004, no pet.); TEX. ATTY. GEN. OP. NO. GA–0550 (2007) ("[T]his office has consistently opined that article XVI, section 17 applies to hold over an officer who constructively resigns under article XVI, section 65 by running for another office.").

As explained at length by Director Ingram in his testimony, there is no conflict between the two applicable sections of Article XVI. Under Section 65(b), a "vacancy" was created in the office of County Attorney upon Bianchi's "automatic," constructive resignation in June of 2013. *See* TEX. CONST. art. XVI, § 65(b). The "vacancy" exists as provided by the Texas Constitution, *see id.*, and it confers to the Commissioners Court, under the Texas Constitution and Local Government Code, the authority and discretion to appoint a successor to serve as County Attorney. *See id.* art. V, § 21; TEX. LOC. GOV'T CODE ANN. § 87.041(a)(5). Meanwhile, under Section 17, Bianchi is required to continue

performing the duties of the office of County Attorney until his successor is duly qualified and the "vacancy" is thereby filled. *See* TEX. CONST. art. XVI, § 17. In this manner, both provisions of the Texas Constitution are given the intended effect of their plain language without discord and without resorting to a rule of construction that would add language to the literal text of the Texas Constitution and thereby supplant, if not subvert, the will of the people as expressed by the language they carefully selected. *Mellinger v. City of Houston*, 3 S.W. 249, 252 (Tex. 1887) ("In the construction of a constitution it is to be presumed that the language in which it is written was carefully selected, and made to express the will of the people, and that in adopting it they intended to give effect to every one of its provisions; and it cannot be presumed that separate and distinct provisions were intended to have the same and no other effect than one of them has, unless the language used, when considered in connection with the whole instrument, shows that this must have been the intention."); *see also Stringer*, 23 S.W.3d at 355.

The record does not support the district court's judgment finding and declaring that Bianchi is holding office unlawfully. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 66.001(1). The undisputed evidence conclusively establishes that Bianchi is holding office lawfully. *See* TEX. CONST. art. XVI, § 17; *City of Keller*, 168 S.W.3d at 816 ("Evidence is conclusive only if reasonable people could not differ in their conclusions, a matter that depends on the facts of each case."). Therefore, we sustain Bianchi's challenge to the legal sufficiency of the evidence. *See Ford Motor Co. v. Castillo,* No. 13–0158, 2014 WL 2790352, at *3 (Tex. June 20, 2014) ("A legal sufficiency challenge will be sustained when the record confirms . . . the evidence conclusively establishes the opposite of the vital fact.").

There is one other basis for our decision.  *See* TEX. R. APP. P. 47.1.  The undisputed evidence and the findings and conclusions of the district court establish that the Commissioners Court made the decision to take no action to replace Bianchi.  *See City of Keller*, 168 S.W.3d at 815.  The Commissioners Court's decision is not subject to collateral attack.  *Harrison v. Jay*, 271 S.W.2d 388, 390 (Tex. 1954).  Therefore, as County Judge Mills observed at the outset of this controversy, this quo warranto proceeding against Bianchi is inappropriate on its face.  County Judge Mills correctly stated that it was the Commissioners Court that made the decision to leave Bianchi in place, which is what the State is complaining about in this suit.  Likewise, Bianchi's attorney raised a valid point in closing arguments when he said that if the State's attorney "has a beef with somebody, he needs to go sue the Aransas County Commissioners Court and try to mandamus them into appointing a replacement."  In this opinion, we hold that the Commissioners Court's decision cannot be collaterally attacked in a suit against Bianchi, who is merely following the Commissioners Court's decision and the Texas Constitution.  *See id.*

As the Texas Supreme has explained:

Our courts have repeatedly held that the judgments of commissioners' courts, in all matters over which they are given jurisdiction, are entitled to the same consideration as those of other courts provided for by the Constitution; and that such judgments are not subject to collateral attack, and are reviewable only upon appeal or in a direct action for that purpose, in the absence of a showing of gross abuse of discretion, or of fraud or collusion or lack of jurisdiction.

*Id.*

"A party can invoke the district court's constitutional supervisory control over a Commissioners Court judgment only when the Commissioners Court acts beyond its

28

jurisdiction or clearly abuses the discretion conferred upon the Commissioners Court by law." *Commr's Court of Titus Cnty. v. Agan*, 940 S.W.2d 77, 80 (Tex. 1997). "The district court may order the Commissioners Court to exercise its discretion, but [the district court] cannot tell the Commissioners what decision to make." *Id.* As we noted in the background section of our opinion, even the District Attorney acknowledged prior to suit that "the Commissioner's Court failure or refusal to take action on seeking a qualified applicant for the position of Aransas County Attorney may not be technically violating the Constitution and laws of the State of Texas . . . ."

In any event, in this quo warranto proceeding, the State did not invoke the district court's supervisory control over the Commissioners Court because it failed to make the Commissioners Court a party to this suit and failed to allege that the Commissioners Court "has acted arbitrarily, capriciously, collusively, fraudulently, or, otherwise, in abuse of its discretion." *Cascos v. Cameron Cnty. Attorney*, 319 S.W.3d 205, 225 (Tex. App.—Corpus Christi 2010, no pet.); *see also* TEX. CONST. art. V, § 8. Thus, the issue before the Court in this appeal is strictly limited to whether the district court erred in finding Bianchi guilty of holding office "unlawfully." TEX. CIV. PRAC. & REM. CODE ANN. § 66.001(1). The Court is categorically forbidden from addressing any opinion on the decision of the Commissioners Court to allow Bianchi to remain in office because that would dignify exactly the type of collateral attack the law forbids and would be nothing more than a non-binding advisory opinion. *See Harrison*, 271 S.W.2d at 390; *see also Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 444 (Tex. 1993) ("The distinctive feature of an advisory opinion is that it decides an abstract question of law without binding the parties.").

The Court's decision to render a take nothing judgment against the State is supported by the record and by the plain meaning of the terms of the applicable provisions of the Texas Constitution and Local Government Code. *See* TEX. CONST. art. XVI, §§ 17 & 65(b); TEX. LOC. GOV'T CODE ANN. § 87.041(a)(5); *City of Keller*, 168 S.W.3d at 816; *Stringer*, 23 S.W.3d at 355. The Court's decision is supported by a long line of opinions by the Texas Attorney General, the uniquely compelling testimony of Director Ingram from the Elections Division of the Texas Secretary of State's Office, and by the brief of the amici in this case, the Texas Association of Counties, County Judges and Commissioners Association of Texas, Texas Conference of Urban Counties, and Texas Municipal League.

As well intentioned and diligently reasoned as it was, the district court's decision would have uprooted a firmly founded and widely accepted understanding of a critical aspect of Texas constitutional law that is of vital importance to certain public officials (particularly, those contemplating or who have announced their candidacy for a different position), the authorities charged with replacing them, and the communities they serve. The Texas quo warranto statute was never intended to allow for judicial second-guessing of decisions committed to the sound discretion of the County Judge and Commissioners Court. Such decisions are best left to locally-elected public officials who are in the best position to judge the needs of these particular issues and to exercise sound discretion in addressing them.

We will not disturb the orderly balance of powers as expressed by the will of the people in the Texas Constitution and the statutes enacted by the Texas Legislature. The applicable rule, preserved in today's decision, protects Bianchi from removal by quo

warranto proceedings by recognizing the legal distinction that exists between the lawfulness of Bianchi's holding over and the discretion and authority of the Commissioners Court to make the decision, which has not been challenged, to take no action to appoint a successor.

Accordingly, for these reasons, we sustain the legal sufficiency challenge to the district court's judgment declaring that Bianchi is holding the office of County Attorney unlawfully and removing him from office. *See* TEX. R. APP. P. 47.1.

### III. CONCLUSION

The Court reverses the district court's judgment and renders a take nothing judgment against the State. All pending motions are hereby DISMISSED AS MOOT.

**/s/ Rogelio Valdez**
ROGELIO VALDEZ
Chief Justice

Delivered and filed the
21st day of August, 2014.