Gwynn LUMPKIN, et al, Plaintiffs,

v.

**ARANSAS COUNTY, TEXAS,**
Defendant.

**CIVIL ACTION NO. 2:15–CV–190**

United States District Court,
S.D. Texas, Corpus Christi Division.

Signed 08/30/2016

Jon D. Brooks, Brooks LLP, Corpus Christi, TX, for Plaintiffs.

Myra Kay Morris, Brian Charles Miller, Royston Rayzor et al, Corpus Christi, TX, for Defendant.

## ORDER ON MOTION FOR SUMMARY JUDGMENT

NELVA GONZALES RAMOS, UNITED STATES DISTRICT JUDGE

Plaintiffs, Gwynn Lumpkin and Leslie Krenek filed this lawsuit pursuant to 42 U.S.C. § 1983 against Aransas County, Texas (the County), claiming that they were discharged from the County's employment as paralegals in retaliation for their exercise of their First Amendment right to free speech. D.E. 1. Before the Court is the County's Motion for Summary Judgment (D.E. 22). Plaintiffs filed their Response (D.E. 23) and Defendants filed a Reply (D.E. 24). On July 5, 2016, the Court heard arguments on the motion and ordered additional briefing. Thereafter, Plaintiffs filed their Second Supplemental Response (D.E. 34) and Defendants filed their Supplemental Reply (D.E. 36). For the reasons set out below, the Court GRANTS the motion (D.E. 22).

### FACTS

Aransas County, Texas employed Plaintiffs Gwynn Lumpkin (Lumpkin) and Leslie Krenek (Krenek) for many years as paralegals in the County Attorney's office. At the time of the events involved in this lawsuit, County Attorney Richard Bianchi (Bianchi) was running against the incumbent, William Adams, for Judge of the Aransas County Court–at–Law. Bianchi won the March 2014 Republican primary, had no Democratic opponent in the general election, and took the bench in January 2015. At that time, Kristen Barnebey (Barnebey)[1] became the County Attorney. This case involves events in the County Attorney's office leading up to the election and the post-election termination of Plaintiffs.

After Bianchi announced his candidacy for Judge in the summer of 2013, Assistant County Attorney, Deborah Bauer (Bauer), hoped that Bianchi would resign his position as County Attorney, consistent

---

1. Ms. Barnebey is so named on the County Attorney's website, but was deposed as Kristen Barnebey Blanford.

with the Texas resign-to-run law. She apparently complained to Aransas County's District Attorney Mike Welborn (Welborn) regarding Bianchi's alleged failure to comply with the Texas resign-to-run law[2] and her observations of him campaigning on government time, among other things. Thereafter, Bauer's employment circumstances allegedly deteriorated. Bianchi demoted her, changed her case assignments, moved her to a less desirable office, took away the support of the paralegals in the office, eliminated her ability to work from home, and ultimately terminated her after she took medical leave.

Bauer sued the County for unlawful employment practices, including retaliation for taking leave under the Family Medical Leave Act, retaliation for exercising First Amendment rights, and including a Whistleblower claim. *See Bauer v. Aransas County, Texas,* No. 2:14–cv–075 (S.D. Tex.). In the course of that litigation, Plaintiffs in this case, Lumpkin and Krenek, were deposed and their text conversations about events in the County Attorney's office were disclosed. On January 30, 2015, after Bianchi took the bench and Barnebey took over the County Attorney's office, the parties announced the settlement of Bauer's case. On February 2, 2015, Barnebey terminated the employment of Lumpkin and Krenek.

Barnebey candidly admitted that the terminations were based, in part, on what Lumpkin and Krenek said in their respective depositions and texts disclosed during the Bauer litigation. Lumpkin and Krenek contend that this shows they were fired in retaliation for their exercise of the First Amendment right to free speech. In defense, the County explains that Barnebey's decision was based upon the juxtaposition of deposition testimony and texts and other conduct, which calls into question Plaintiffs' honesty, integrity, and willingness to be team players. Defendant County seeks summary judgment that (1) Lumpkin's and Krenek's texts are not entitled to First Amendment protection, (2) the terminations were not caused by any First Amendment speech, and (3) no free speech rights outweighed the County's interest in effective public service.

## DISCUSSION

■ An action under § 1983 for retaliation against a public employee based upon that employee's exercise of the First Amendment right to free speech requires proof of the following elements:

First, the Plaintiffs must suffer an adverse employment decision. Second, the Plaintiffs' speech must involve a matter of public concern [with the *Garcetti* threshold question resolved in favor of citizen speech over employee speech]. Third, the Plaintiffs' interest in commenting on matters of public concern must outweigh the Defendants' interest in promoting efficiency [the *Pickering* balancing test]. Fourth, the Plaintiffs' speech must have motivated the Defendants' action.

*Harris v. Victoria Independent School District,* 168 F.3d 216, 220 (5th Cir. 1999) (citations omitted). The first element is undisputed. Plaintiffs were terminated—an undeniably adverse employment action. *E.g., Harrington v. Harris,* 118 F.3d 359, 365 (5th Cir. 1997). The County's summary judgment motion contends that Plaintiffs

---

2. As a result of a legal challenge, Bianchi was considered to have resigned from his County Attorney post to run for Judge. However, he was permitted to hold over in the County Attorney position pending replacement by the Aransas County Commissioner's Court. No replacement was named prior to Bianchi taking office as Judge. *See generally, Bianchi v. State,* 444 S.W.3d 231 (Tex. App.–Corpus Christi 2014, no pet.).

cannot meet any of the remaining requirements.

### A. Whether Speech Involved a Matter of Public Concern

#### a. Scope and Standard of Review

The second element is directed to whether the speech was entitled to First Amendment protection as a citizen's contribution to a matter of public concern. The County challenged this element on the preliminary basis that Plaintiffs refused to identify the specific text messages or deposition testimony alleged to constitute protected speech. Rather than identify and explain, Plaintiffs objected to the request to do so in their depositions, claiming that First Amendment protection is a question of law. In their original summary judgment response, Plaintiffs requested rulings on those objections—solidifying their refusal to identify the speech on which they base their claims. And in response to discovery asking them to identify the protected speech that serves as the basis of their claim, Plaintiffs simply identified "all of it."

■ In their second supplemental response, Plaintiffs narrowed down their complaint to three groupings of text conversations that touch on a number of topics. D.E. 34, pp. 5–10. In mixed speech cases such as this, where there are multiple topics and recipients, the Court separately analyzes each aspect of the communication. *Davis v. McKinney*, 518 F.3d 304, 314 (5th Cir. 2008). That does not mean, however, that the texts are taken in isolation. "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by

the whole record." [3] *Connick v. Myers*, 461 U.S. 138, 147–48, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). This is a question of law for the Court. *Id.* at 148, 103 S.Ct. 1684 n.7. Each topic will be considered below.

#### b. *Garcetti* Threshold Decision: Citizen Speech Versus Employee Speech

■ As will be detailed below, the Court agrees that, in the abstract and much like the speech in the *Connick* case, one or more of the topics included in the Plaintiffs' speech "touched upon issues of public concern in only a most limited sense." *Connick*, 461 U.S. at 154, 103 S.Ct. 1684. However, when considering the form and context of the statement, even matters that can be construed as being of public concern can be, in context, confined to the realm of employee speech, depending on the role the speaker occupied when speaking. *Id.* at 147, 103 S.Ct. 1684. *See also Williams v. Dallas Indep. Sch. Dist.*, 480 F.3d 689, 692 (5th Cir. 2007). This is described as a threshold layer of decision (prior to the application of the *Pinkering* balance test), which was identified in *Garcetti v. Ceballos*, 547 U.S. 410, 418, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006). *Williams, supra.* And it presents a question of law for the Court. *Graziosi v. City of Greenville*, 775 F.3d 731, 736 (5th Cir. 2015).

Plaintiffs' authorities cited in favor of finding protected speech are instructive: *Schultea v. Wood*, 27 F.3d 1112, 1120 (5th Cir. 1994), *superseded on other grounds*, 47 F.3d 1427 (5th Cir. 1995) (*en banc*) (related to pleading requirements);

---

**3.** Plaintiffs complain that the issue of whether they actually sought to bring the issues on which they spoke into public light for action is a new issue raised for the first time in a sur-reply. D.E. 34, p. 29. However, this is a consideration embedded in the question of whether the speech is protected as a matter of public concern. Thus it was raised in the summary judgment motion initially. D.E. 22, pp. 12–16.

*Brawner v. City of Richardson*, 855 F.2d 187, 191–92 (5th Cir. 1988); *Davis v. Ector County*, 40 F.3d 777, 782 (5th Cir. 1995); and *Branton v. City of Dallas*, 272 F.3d 730, 740 (5th Cir. 2001). Each of these cases involved bringing misconduct to light in the public arena for appropriate law enforcement, agency, or public investigative purposes.

In *Schultea*, the protected speech had to do with the chief of police's investigation of a city councilman's criminal activity and the reporting of his results to the city manager and to the Texas Department of Public Safety for further law enforcement action. In *Brawner*, the speech alleging police misconduct was in a letter sent not only to the police chief, but also to the mayor, city council members, and reporters at the local paper. In *Davis*, a drug task force investigator sent a letter regarding his wife's sexual harassment claim against the sheriff's office to the county commissioner's court to underscore the legitimacy of her claim and to preempt a cover-up. In *Branton*, an internal affairs investigator, pursuant to her duty to do so, reported to a hearing officer her concerns that another officer's testimony was dishonest.

Here, however, Lumpkin and Krenek's texts were private communications. While private communications can be entitled to First Amendment protection, that protection is granted when the private communication is directed to someone for purposes of public action. *E.g., Benningfield v. City of Houston*, 157 F.3d 369, 375–76 (5th Cir. 1998) (and cases therein cited). Plaintiffs directed their texted concerns only to Bauer. At the very least, then, to find the matters to constitute citizen speech on matters of public concern, the Court must find that Lumpkin and Krenek had a reasonable expectation that Bauer was in a position to take public interest action on their communications.

### c. Application of the Test to the Speech Topics

■ **Disloyalty.** Plaintiffs complain of Barnebey's statement that she terminated Plaintiffs' employment because their communications evidenced disloyalty. D.E. 34, p. 1 & n.1 (citing D.E. 24, p. 21 (and quoting from D.E. 22–5, p. 64)). Plaintiffs argue that this represents an impermissible political party affiliation requirement for the paralegals' positions. But nothing in the identified speech or Barnebey's comment addresses partisan politics and the argument is defeated by the context of the statement. Barnebey testified as follows:

A: And then I get these texts and I realize, Oh, my gosh, they've just been playing both sides or playing three sides since the beginning. And they aren't telling me the truth, and they can no longer be trusted, and *they aren't loyal.*

Q: Any other reasons you fired them?

A: So I would—so I would just reiterate lack of trust, *lack of loyalty to the office and to me.* I couldn't imagine people who were—were in the legal field, aware of e-discovery, doing these things and using these words and being so disrespectful. And then explaining to me that actually it was the lawyer who was evil and made them do it. I couldn't foresee them handling a misdemeanor or a felony. Because, remember, we were about to get felonies, potentially. I couldn't—*I couldn't rely on them.*

. . .

Q: . . . Is it your testimony that one of the reasons you were upset with them . . . is because you believed they, in fact, had text messages or e-

mails on their phones and just chose to not give them to you? . . .

A: So . . . the fact that I asked them whether or not they had information on their phones, or at least personal information, maybe not on their phones and not drilled down to this pers——but personal information through electronic discovery, and then *they chose not to provide it to the county for its defense,* yes.

. . .

A: . . . And I believe the response [to whether they had information responsive to discovery requests] was, there are—there is nothing out there that would be responsive to discovery in the lawsuit kind of thing. And if we're being very broad, it was nothing about the lawsuit, nothing about the facts of the lawsuit. "We're behind Richard. We want to help." Those kinds of things.

. . .

Barnebey Depo., D.E. 22–5, pp. 64–67 (emphasis added).

In context, including Barnebey's full deposition, it is clear that Barnebey's concern was that persons had complained about the negativity of Lumpkin and Krenek, including two Justices of the Peace and a co-worker, Amilynn Daniels, who named the two Plaintiffs as the reason she was leaving the County Attorney's office. Plaintiffs had denied reports of their behavior and Barnebey had believed them or at least had given them the benefit of a doubt, only to find from the texts disclosed in the Bauer case that the allegations of poor conduct were true. Not only did she learn that they lied about allegiance to Bianchi, but they had information that, as paralegals, they knew or should have known should have been produced in discovery in the Bauer case in connection with the County's defense. Instead, they

denied any such evidence existed. And when Barnebey started asking about information stored on personal cell phones, Plaintiffs both bought new phones with the apparent intention of hiding what was on the old phones.

These are not issues having to do with any political party. Rather, Barnebey's comment is an appropriate supervisory response to the fact that Plaintiffs were dishonest, not forthcoming with material for discovery responses in a case against the County, and were actively hiding evidence. Moreover, they demonstrated a willingness to default on their own job responsibilities. Texting about a child abuse case, Lumpkin texted Bauer, "The kids are older. They ate [sic] supposedly giving drugs to the kids. And there was a while ago physical violence by the boyfriend. Will keep u advised[.] *Not even going to tell Richard [Bianchi]. He would be clueless anyway[.]*" D.E. 22–3, p. 49 (emphasis added).

In reference to plea offers, there was also this exchange between Lumpkin and Bauer:

Lumpkin: *Just brought them back to leslie [Krenek].*

Bauer: OMG—he didn't even look at them

Lumpkin: He asked leslie where the offers were. *Leslie told him she didn't know[.] No he doesn't know*

Bauer: Good for her—why do I want to make a plea offer if he is[n']t going to file it?

Lumpkin: I agree

D.E. 22–3, p. 84 (emphasis added). These texts reflect that both Lumpkin and Krenek were willing to withhold information and lie to Bianchi about case preparation—and intermingled those admissions with exclamations about letting the court find out how clueless Bianchi is. This is not the professional behavior expected of parale-

gals, nor the allegiance they owe their employer with respect to the work to be done.

In context, nothing about Barnebey's concern for loyalty has anything to do with party affiliation or even the preference for a candidate. They have to do with appropriate efforts to advance the work of the office. While Lumpkin and Krenek played games with Bianchi's court preparation, they did it at the potential expense of the cases entrusted to the office. The Court rejects Plaintiffs' argument that their speech was protected as expressions regarding partisan politics. It was not of that character. It was not citizen speech.

■ **Resign–to–Run and Campaigning.** Plaintiffs argue that the County admitted that they were terminated in part on the basis of their texted discussion about the Texas resign-to-run law and the effect Bianchi's negative campaigning was having on the office. The Court accepts that, when Bianchi declared his candidacy for Judge, an issue of public concern arose regarding his obligation to resign as County Attorney and the conflict that arose when he held over in his office. This triggered litigation seeking his removal. Despite Plaintiff's briefing regarding the importance of context in evaluating these issues, however, they fail to articulate how the content of their speech related to that public debate.

Lumpkin and Krenek expressed their opinion that Bianchi should resign. They opined that his continued occupation of the County Attorney's office worked against them because Bianchi's campaign against Adams was causing Adams to try to punish Bianchi by accelerating the trial schedule on matters involving the County Attorney's office. The effect was to overwork the County Attorney's staff.

The immediate context of Plaintiffs' comments was private. They did not seek to make their own opinions public. However, it is arguable that the nature of the discussion had the intent or effect of prompting Bauer, at her own risk, to complain to District Attorney Welborn about Bianchi's holdover in the County Attorney's office. Welborn did pursue litigation on that issue. *Bianchi v. State, supra.* Thus the Court finds that the speech regarding the resign-to-run issue touched upon a matter of public concern and was arguably citizen speech.

■ **Competency for Position as Judge.** Plaintiffs repeatedly insulted Bianchi's intelligence and honesty, both with respect to his work as a lawyer and his campaigning. They argue that this is quintessential citizen speech regarding matters of public interest because Bianchi was running for Judge. However, these comments were not raised for public debate regarding Bianchi's potential judicial competence, but—in context—were pedestrian gripes among co-workers about a supervisor. When asked in a more public forum—their depositions—no such insults were uttered. In fact, they claimed to be supportive of Bianchi as their employer.

Plaintiffs cannot, in good conscience, contend that they sought to sway public opinion for the good of the County Court at Law or Aransas County with their insults. They did nothing to act publicly on these opinions or to prompt Bauer to act on them. The Court rejects Plaintiffs' arguments that their communications constituted citizen speech with respect to Bianchi's competence as County Attorney or fitness to take the position of Judge of the County Court at Law. At best, they were employee speech regarding the conduct of the workplace.

■ **Reference to Judicial Commission.** Bauer, not Plaintiffs, exclaimed about Bianchi reporting a jury issue in Adams'

court to the judicial commission. This subject involves only one text by Lumpkin, stating, "told u he would." In context, this was private speech with no real purpose, much less the advancement of public debate. The Court rejects Plaintiffs' argument that this single statement on the subject was citizen speech.

■ **Sexual Harassment.** Plaintiffs consider Lumpkins' texts about Bianchi's "too friendly" interaction with a co-worker and that co-worker's manner of dress as speech regarding sexual harassment. Nothing in this record suggests that any employees, including Plaintiffs, were subjected to unwanted sexual advances or sought to report such a claim. Plaintiffs certainly have not stated any sex discrimination claim in this lawsuit seeking redress for their discharge. Despite a public interest in maintaining appropriate workplaces and punishing employers who engage in sexual harassment, Plaintiffs did not make their concerns public to influence opinions as to Bianchi's fitness for office or to reform their workplace.

Any chance that the texts constituted citizen speech is defeated because Lumpkin's complaint that the relationship between Bianchi and the co-worker made her "uncomfortable" was made only to Bauer. At best, this can be construed as an employee complaint to a supervisor concerning a hostile work environment. "[T]he caselaw is unanimous in holding that employee's communications that relate to his own job function up the chain of command, at least within his own department or division, fall within his official duties and are not entitled to First Amendment protection." *Davis v. McKinney*, 518 F.3d 304, 313 n.3 (5th Cir. 2008). *See also, Dodds v. Childers*, 933 F.2d 271, 273–74 (5th Cir. 1991); *Dorsett v. Board of Trustees for State Colleges & Univs.*, 940 F.2d 121, 125 (5th Cir. 1991); *Moore v. Mississippi Valley State Univ.*, 871 F.2d 545, 551 (5th Cir. 1989).

■ Thus the form and context of Lumpkin's texted complaint represents employee speech as it is a complaint made within the chain of command about work conditions. According to the Supreme Court, "[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti v. Ceballos*, 547 U.S. 410, 421, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006).

Plaintiffs argue that their expressed concerns did not implicate their official duties because they were not required to monitor such issues as a part of their jobs. But case law does not so narrowly confine the concept of employment speech. "Activities undertaken in the course of performing one's job are activities pursuant to official duties." *Williams*, 480 F.3d at 693 (citing *Garcetti, supra*). Lumpkin's communications on this issue were undertaken in the course of performing her job and are thus official duties. The Court finds that the issue of Bianchi's alleged relationship with a staff member, described as sexual harassment, was employee speech.

■ **Use of County Equipment and Fraudulent Timesheets.** Plaintiffs' argument is conclusory regarding Bianchi's receipt of a campaign-related fax on his office machine and government workers being paid for time spent campaigning. Courts have held that, even where government money, fraud, and illegality is involved, speech regarding employer budgets and spending among government employees is employee speech. "Even if the speech is of great social importance, it is not protected by the First Amendment so long as it was made pursuant to

the worker's official duties." *Williams*, 480 F.3d at 692 (citing *Garcetti, supra*). As set out above, Plaintiffs' activities in the course of performing their employment—monitoring fax machines and noting the work schedules of co-workers— are official duties. Thus this category must be treated as employee speech.

█ **Plaintiffs' Willingness to Work for Bauer.** Plaintiffs' briefing is also conclusory on this issue. Barnebey's concern here was Plaintiffs' dishonesty and contradictions. When deposed and when writing letters connected to the Bauer case, Plaintiffs testified that Bauer was unbearable to work for. But Lumpkin, in texts, assured Bauer that she was a wonderful boss and would be happy to work for her, as would Krenek. The same contradiction, in reverse, applied to Plaintiffs' attitude toward working for Bianchi. In depositions, they extolled Bianchi's virtues while in texts they were derisive and Lumpkin claimed that she hated having to work for him.

The public is not concerned with whether Plaintiffs approve of the supervising lawyers they work for or whether they enjoy their jobs. The griping and assurances, regardless of how they may or may not contradict each other, are typical employee speech having to do with job satisfaction and internal employee relations. It is not citizen speech.

█ **Depositions.** Plaintiffs also complain that their terminations were in response to speech they were legally compelled to make in the Bauer case. Sworn testimony given under subpoena and outside the scope of ordinary job duties, even when it relates to information gleaned in the course of employment, can be protected as citizen speech because the witness bears an obligation to the court and society at large to tell the truth. *Lane v. Franks*, —— U.S. ——, 134 S.Ct. 2369, 2378–79, 189 L.Ed.2d 312 (2014). Absent evidence that the testimony was false, erroneous, or unnecessarily disclosed sensitive, confidential, or privileged information, it should be protected citizen speech. *Id.* at 2381.

The record does not reflect whether Plaintiffs were subpoenaed to appear for depositions in the Bauer case. But if they were not, they appeared at the request of the County, their employer—thus being compelled. Plaintiffs did not identify any particular deposition testimony that they contend is protected and thus appear to claim a First Amendment right based merely on the fact that their testimony was for a legal case.

It is questionable whether Plaintiffs' identification of this speech in its totality based not on content but on the procedural manner of its utterance is a factually sufficient premise for their complaints. There are also questions regarding the truthfulness of the testimony. But construing doubts and ambiguities in favor of Plaintiffs under the summary judgment standard of review, the Court is willing to treat it as citizen speech at this phase of the analysis.

**Overview of Speech.** Plaintiffs have taken the position that the discussion of any matter that can conceivably be construed to touch on matters of public concern must be so construed. The Court treats only the resign to run/campaigning texts and the depositions as citizen speech. But whether these communications are protected by the First Amendment still depends upon the *Pickering* balancing test.

**B. *Pickering*: Balancing the Public Interest Against the Employer's Interest.**

█ Even if the Court were to treat all of the identified speech as citizen speech raising matters of public concern, the speech is not protected under the First

Amendment unless the individual constitutional interest outweighs the employer's interest in regulating its workplace. *Pickering v. Board of Ed. of Township High School Dist. 205*, 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). This third element "reflects both the historical evolvement of the rights of public employees, and the common sense realization that government offices could not function if every employment decision became a constitutional matter." *Connick*, 461 U.S. at 143, 103 S.Ct. 1684. Thus the Court must weigh the First Amendment issues against the reasons the employer gave for discharge. *Id.* at 150, 103 S.Ct. 1684.

■■■ Like the second element, the third element poses a question of law. *Breaux v. City of Garland*, 205 F.3d 150, 156 (5th Cir. 2000) (citing *Brady v. Fort Bend County*, 145 F.3d 691, 708 n. 7 (5th Cir. 1998)). This legal determination is made with the understanding that, "When close working relationships are essential to fulfilling public responsibilities, a wide degree of deference to the employer's judgment is appropriate." *Id.* at 151–52.

■■■ Taken in context, nothing about the text exchanges or deposition testimony upon which Plaintiffs rely demonstrate an earnest interest in the public good. At best, they vent job dissatisfaction, exchange opinions of disdain for their supervisor and a desire to see him gone, and demonstrate an effort to align with Bauer—all of which was belied by the deposition testimony which they invoke as important to society. While the public issue regarding the resign-to-run law and the necessity of depositions in litigation prevent a determination that Plaintiffs' free speech side of the *Pickering* balance is empty, these interests—in context—weigh very lightly on the scale.

In contrast, the County's interests weigh heavily. The evidence supports Barnebey's concerns regarding general honesty and Plaintiffs' negative influence on office politics. Plaintiffs' speech relates a failure to provide the professional services they were hired for and a serious problem for office relationships.

> [T]he Government, as an employer, must have wide discretion and control over the management of its personnel and internal affairs. This includes the prerogative to remove employees whose conduct hinders efficient operation and to do so with dispatch. Prolonged retention of a disruptive or otherwise unsatisfactory employee can adversely affect discipline and morale in the work place, foster disharmony, and ultimately impair the efficiency of an office or agency.

*Arnett v. Kennedy*, 416 U.S. 134, 168, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974) (applying *Pickering* balance). The employer interest here even extends beyond the office and into the cases and the parties (litigants, victims, and witnesses) whose lives are subject to judicial intervention. Plaintiffs' willingness to sabotage a supervising attorney at the expense of the cases assigned to him is intolerable. Thus the *Pickering* test weighs in favor of the County and it has defeated the third element of Plaintiffs' claim. The Court's finding in this regard applies even if all of the speech Plaintiffs claim is protected is, in fact, eligible for protection.

## C. Causation

Because most of Plaintiffs' claims to protected speech fail the *Garcetti* threshold determination of citizen speech and all of Plaintiffs' claims fail the *Pickering* balance test, the Court need not, and does not, address Defendant's challenge to the causation element of Plaintiffs' claims.

## CONCLUSION

For the reasons set out above, the Court sustains the County's challenges to both

the second and third elements of Plaintiffs claims. The Court thus need not reach the fourth element, causation. Consequently, the County is entitled to summary judgment that Plaintiffs take nothing and that the County recover its costs from Plaintiffs. This action is DISMISSED.

ORDERED